Will of Stark, 149 Wis. 631.

# APPENDIX.[1]

## WILL OF STARK.

*January 10—January 30, 1912.*

·(1, 2) *County courts: Appeal: Allowance after time limited: Bond not seasonably filed: Curing error.* (3–15) *Wills: Construction: "Residue:" "Then living:" Realty: Equitable conversion: Executors: Payment of taxes, etc., from personalty: Accumulations: Perpetuities: Income from realty: Persons presumptively entitled: Expectant estates: "Securities" at "par value:" "Children:" "Nephews."*

1. Under sec. 4035, Stats. (1898), providing that after the time for appealing has expired no appeal from the county court shall be allowed by the circuit court without "reasonable notice" to the party adversely interested, it was not error in this case—a proceeding for construction of a will—to allow such an appeal to be taken on oral notice in court, other appeals in the same matter being then pending, all the parties being present and all except one consenting, the trial of the appeal being continued to a later date and not concluded for several months, and there being no showing of surprise or hardship.

:2. Notice of an appeal from the county court having been duly given although the required bond was not seasonably filed, and, after the filing of such bond, the circuit court having proceeded with the trial in all respects as if the appeal had been properly taken, it will be considered on appeal to the supreme court that the circuit court impliedly, if not expressly, approved of the procedure followed, and that the default in the timely filing of the bond was cured.

·3. The terms "residuum" and "residuary estate" properly mean what remains of a decedent's estate after debts and expenses are paid and particular legacies deducted. .

4. If it appears, however, that a testator intended there should be a succession of residuums to be distributed from time to time, his

---

[1] The three cases included in this appendix were not printed in their regular order because of the pendency therein of motions for :rehearing, which were afterwards abandoned.

intention in that regard should be carried out despite the usual significance of that term.

5. A will drawn by an experienced and able lawyer for a successful and methodical business man, disposing of an estate of more than half a million dollars, of which about $200,000 was in real estate, gave the testator's wife, aged sixty-three years, the use during life of the homestead and its contents, providing that the taxes and repairs should be paid out of the residue of the estate, also bequeathed to her his horses and carriages and $30,000 in cash and securities, and then set apart in trust $250,000, the income of which was to be devoted to her support during life. At her death $125,000 of this trust estate was to go to found a children's hospital, provided certain conditions should be met within four years after the wife's death, and in default thereof such sum was to fall into the residue of the estate and be distributed under the residuary clause to the then living children of his brothers and sisters, with one exception. Cash legacies of $3,000 (increased by codicils to $5,000) were given to his nephews and nieces at the time of his death. Other cash legacies were given to various relatives, some payable after his wife's death, with the provision that in case of the legatee's previous death the sum bequeathed should fall into the residue. Then came the residuary clause which declared that "after providing for the devises, bequests, and legacies therein mentioned" and "after the use of so much" as was necessary to defray taxes and repairs on the homestead and the payment of two additional legacies, he gave the "balance of the residue and remainder of my estate in equal parts to the then living children of my brothers and sisters," except one. *Held,* that the testator had in mind but one residue, not a succession of them; and such residue could only be definitely determined, and hence distributed, when the bequest to the children's hospital was either earned or forfeited; and that the words "then living" had reference to that time and not to the time of testator's death.

6. Where, as in this case, the scheme of the will can be carried out without the conversion of real property into money, the estate being ample to pay all specific legacies and demands without the sale of any realty, and the will provides explicitly for the sale of the homestead after death of the widow but makes no reference to any other sales, and the residuary clause applies to "all the rest, residue, and remainder of my property . . . both real and personal," the doctrine of equitable conversion cannot be applied so as to construe the will as dealing only with personal property.

7. Where a will directs that taxes and repairs on the testator's homestead, which is devised to his widow for life, be paid from the residuary estate, these expenses must be paid from the personal estate before resorting to the real estate or the rents thereof.

8. No specific directions having been given for disposition of the income arising from real estate and personalty included in the residuary estate, the testator must be deemed to have directed that it accumulate until the time when such residuary estate is to be distributed.

9. As to the income from the personal estate such accumulation is permitted, but secs. 2060–2063, Stats. (1898), do not permit accumulations of the rents and profits of real estate except for certain specific purposes and uses which are not present here.

10. Under sec. 2064, Stats. (1898), therefore, the rents and profits of real estate must go and should be distributed annually to the persons entitled to the next eventual estate.

11. Such persons in this case are, until the residuary legatees become absolutely fixed by the earning or forfeiting of the hospital bequest, the living nephews and nieces of the testator whose estate in expectancy fulfils all the calls of said sec. 2064.

12. While the word "securities" construed strictly does not cover corporate stock, but rather bonds or evidences of debt, it is generally used in a broader sense and as embracing certificates of stock.

13. Where the testator, who owned both stocks and bonds, bequeathed to his wife $25,000 in cash or, at her election, "securities . . . of said amount of $25,000 at par value," she was entitled to take bank stocks at their face value, although they were actually worth much more.

14. The word "child" in a will may sometimes be construed as applying to a grandchild, and "nephew" may be held to cover grandnephew, but only when the evident purpose of the testator demands such a construction.

15. Bequests to "children" of testator's brothers and sisters and to "nephews and nieces" living at the time of his death are held, in this case, not to include the son of a nephew who died before the testator, especially in view of the facts that the will was drawn with much care and great precision of expression and that in other instances provision is expressly made therein for the children of a legatee to take in case of the latter's death.

APPEALS from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Modified and affirmed.*

This is a proceeding for the construction of the will of Charles G. Stark commenced in the county court of Milwaukee county and appealed to the circuit court, and brought to this court by several appeals.

Charles G. Stark, a resident of Milwaukee, died September 20, 1908, testate, leaving a homestead appraised at $23,750, other real estate appraised at $188,500, and personal property appraised at $466,358.99, including certain bank stocks hereinafter referred to. He left no issue, no adopted child, and no issue of any adopted child. He was survived by his widow, *Lucy A. H. Stark,* the principal appellant here, who, at the time of his death, was sixty-nine years old. He was also survived by one brother, Joshua Stark, of Milwaukee, Wisconsin, and one sister, Sarah Jane Smith, of Utica, New York, both of whom have since died, and eight nieces and nephews—*Frank G. Stark* and *Kate A. Inbusch,* children of said Joshua Stark; *William Stark Smith, Carrie M. Smith, and Mary L. Spencer,* children of said Sarah Jane Smith; *Julia May Stark* and *Theodora Stark,* children of Theodore F. Stark, predeceased; and *Charles Edward Conde,* child of Martha Conde, predeceased. Charles Edward Stark, a son of said Theodore F. Stark, died before the testator, leaving one child, *Charles Edward Stark.* Mr. Stark executed his will May 27, 1902, the first codicil thereto on March 2, 1904, a second codicil on July 29, 1904, a third codicil February 7, 1905, a fourth codicil October 20, 1905, and a fifth codicil February 18, 1908.

The original will is very long. It consists of twenty-six numbered items or paragraphs, which, as changed by the various codicils (five in number), make the following bequests, in substance:

(1) The use of his homestead to *Lucy A. Hayt Stark,* his wife, during her life, all taxes and necessary repairs during her lifetime to be paid from "the residue of my estate after

providing for the specific devises, legacies, and bequests here-inafter mentioned."

(2) Household furniture and all other personal property in homestead (except two portraits) to his said wife.

(3) Horses, carriages, and property in barn to his said wife, also $5,000 to be paid immediately after his death.

(4) $25,000 in cash or securities, at her election, "which securities, if such she takes in lieu of cash, shall be of said amount of $25,000 *at par value.*"   ·

(5) $250,000 to *Abbott Lawrence,* as trustee, to be invested and kept invested, and net income to be paid to his said wife. $25,000 of this sum "shall become a part of my residuary estate" on death of wife.

(6) Upon wife's death he gives out of the $250,000 fund last named:

(a) to *Abbott Lawrence,* as trustee, for use of testator's sister, Sarah J. Smith, *if she survive wife,* $30,000, to be kept invested and the net income paid to said Sarah J. Smith, and on her death, if she survive his said wife, or if not, then on the death of his said wife to the surviving child or children of said Sarah J. Smith, and the child or children of any deceased child by right of representation.

(b) to his brother, Joshua Stark, *on the death of his said wife,* $30,000.

(c) to *Abbott Lawrence,* as trustee, *on the death of his said wife,* to hold and invest for a children's hospital to be established in the city of Milwaukee, $125,000.

This last named sum is devised on condition of incorporation of the hospital association and contracting for a $50,000 building within four years after death of his said wife, on the failure to comply with which condition the same to "pass into and become part of the residue of my estate" under residuary clause in item 22, and be distributed as part of the residue in equal portions, share and share alike, to the

*"then living children* of my brothers and sisters." If conditions are complied with, same to be paid over to proper officers of hospital corporation.

(d) to Beloit College, $10,000.

If said brothers, or either of them, do not survive wife, then after her death such deceased brother's or brothers' share is given to children of such brother or brothers, share and share alike, and if either brother does not survive wife and dies without issue, then upon death of wife his share of this $250,000 is bequeathed to the then surviving children of other brother and sisters, share and share alike.

It would appear that $30,000 of the $250,000 trust fund for the wife's support is not disposed of after her death, but this results from the fact that a $30,000 bequest to Theodore Stark, contained in this clause of the original will, is revoked by the third codicil, because of the death of Theodore before the death of the testator. By the same codicil this $30,000 becomes a part of the residuary estate upon death of the wife.

(7). Upon wife's death homestead to be sold and proceeds to go to hospital trust fund on same conditions as prescribed with regard to that fund. In case said conditions are not fulfilled, then to become part of residue and distributed as provided in residuary clause.

(8) To his brother, Joshua Stark, $15,000, but if Joshua "does not survive me, then to his children *living at the time of my death,* share and share alike."

(9) To his brother, Theodore F. Stark, $15,000, "but in case he does not survive me, then to his children who shall be living at the time of my death, share and share alike."

(10) To *Abbott Lawrence,* as trustee, $15,000 as trust for Sarah J. Smith during her lifetime, and upon her death to her child or children *then surviving,* and the children of any deceased child by right of representation.

(11) To Milwaukee Protestant Home for the Aged, $2,500.

(12) To American Board of Foreign Missions of Boston, Massachusetts, $5,000.

(13) To Milwaukee Hospital, to endow a free bed in perpetuity, $5,000.

(14) To Milwaukee Orphan Asylum, the income to be used to pay the salary of a manual training teacher, $4,000.

(15) To Layton Art Gallery, to be used in purchasing a painting or other work of art, $5,000.

(16) To each of his nephews and nieces "who shall be living at the time of my death," $5,000.

(17) Revoked by first codicil.

(18) To the vestry of St. Paul's Church for care of cemetery lot in Forest Home Cemetery, $1,000.

To same for maintaining Sunday School and other like work, $5,000.

(19) To Utica, New York, Cemetery Association for care of family lot, $1,000.

(20) To wife, lot in Forest Home Cemetery.

(21) To sister, Sarah J. Smith, the portraits of testator's parents.

(22) All the rest and residue, whether real or personal, "after providing for the devises, bequests, and legacies hereinbefore mentioned, and after use of so much thereof as may be necessary to defray the expense of taxes on my homestead and keeping the same in repair for the use and benefit of my wife, as provided in the first item of this my will, I give, devise, and bequeath as follows:"

"(a) to my nephew, *Charles Edward Conde,* $5,000.

"(b) to my niece, *Carrie M. Smith,* $1,000.

"The balance of the residue and remainder of my property and estate I give in equal parts, share and share alike, to the *then living children* of my brothers and sisters," except *William Stark Smith,* who is excepted because of liberal allowances made to him and his mother during testator's lifetime.

(23) This item contains certain directions intended to make more clear the testator's purpose as to the children's hospital fund, and are not material.

(24) "Under any and all conditions in which my estate may be at the time of my decease, it is my desire and will that all provisions hereinbefore made in favor of my wife, *Lucy A. Hayt Stark*, shall have precedence over any other gifts, devises, legacies, or bequests contained in this my will, and shall be made to her accordingly."

(25) This item contains provisions as to advancements not material to the controversy.

(26) By this item the testator nominates his wife and Charles E. Dyer (by fourth codicil *William E. Black* is named in case Dyer dies before testator) as executors, and gives directions concerning bonds of executors and trustees, etc. At the close of the item he says: "It is my further wish that the executors herein named shall have ample time in which to administer and settle my estate, so that no property, effects, or assets of my estate shall be unduly sacrificed by too speedy conversion of the same into money."

The questions submitted to the court by the executrix and executors of said will in their petition for the construction of said will, together with the answers of the circuit court thereto, are as follows:

"1st. Whether your petitioners as executrix and executors of said will, and their successors, are authorized to hold during the lifetime of said *Lucy A. Stark* the possession of the residue of the estate of said testator after providing for the specific devises, bequests, and legacies mentioned in the first twenty-one items of said will, consisting of both personalty and real estate, for the purpose of paying therefrom all taxes as the same are annually assessed and levied on said homestead, and all expenses for necessary repairs of the same during the lifetime of said *Lucy A. Stark*."

"The court answers said first question as follows: Construing the will as a whole, there is nothing to indicate that

the testator intended the residuary estate to be kept intact during the continuance of the life estate of the widow, although the executors—either by that designation or as trustees—are to continue in power for such duties as may be necessary during such life estate and upon its termination. It is therefore the court's construction that the assignment and transfer of the residuary estate and all the net income therefrom need not await the termination of the life estate, but may be and should be assigned and transferred presently in the due and orderly course of administration; provided, however, that the amount of twenty-five thousand dollars ($25,000) of the said residuary estate shall be retained by the executors or trustees to carry out the testator's instructions with reference to his homestead, as more specifically hereinafter directed."

"2d. If it be the judgment of the court that your petitioners are so authorized, then what disposition, if any, shall they make of the surplus income derived from said residuary estate after the payment of the aforesaid annual taxes and expenses for necessary repairs of said homestead?"

"The answer of the court to the first question disposes of the second question so far as the latter may refer to surplus income derived from the residuary real estate. As to the surplus income, if any, derived from the residuary personal estate to be retained by the executors or trustees, remaining after the payment of annual taxes and expenses for necessary repairs of the homestead, said executors and trustees are instructed and directed to distribute the same in equal parts, share and share alike, to the said *Frank G. Stark, Kate A. Inbusch, Mary Louise Spencer, Carrie M. Smith, Julia May Stark, Theodora Stark,* and *Charles Edward Conde,* their heirs and assigns forever."

"3d. Whether the gift and bequest of the balance of the residuary estate in equal parts, share and share alike, to the then living children of testator's brothers and sisters, excepting said *William Stark Smith,* contained in the twenty-second item of said will, is limited to the nieces and nephews of said testator excepting *William Stark Smith,* living at the time of the death of *Lucy A. Stark,* widow of said testator.

"The court answers said third question as follows: The items of the will containing the words 'then living' are con-

strued by this court to relate to the date of the death of the testator, and such meaning was the intent of the testator. The gift and bequest contained in item 22 of the will, as modified by the codicil thereto bearing date February 18, 1908, of the balance of the residue and remainder of testator's property and estate in equal parts, share and share alike, to the then living children of testator's brothers and sisters, excepting *William Stark Smith,* is construed by the court as a bequest and devise of testator's residuary estate, both real and personal, in equal parts, share and share alike, to *Frank G. Stark, Kate A. Inbusch, Mary L. Spencer, Carrie M. Smith, Julia May Stark, Theodora Stark,* and *Charles Edward Conde,* who were, at the date of the death of the testator, the only living children of his brothers and sisters, excepting *William Stark Smith,* who was excepted in said codicil from the benefits of said residuary bequests and devise."

"4th. Whether bank stocks or other corporate stocks owned by the testator at the time of his death are securities within the meaning of the provisions of item 4 of said will."

"The court answers said fourth question as follows: While technically and standing alone the word 'securities' may not mean certificates of stock, yet, considered in the light of the wording of item 4 of said will, the condition of the estate, and the intent which seems to permeate the entire instrument, the court is of the opinion that it is in conformity with the wishes and intent of the testator to construe item 4 that the wife of the testator should be permitted to select twenty-five thousand dollars ($25,000) in certificates of stock or bonds scheduled in the inventory; and that the par value means the face value of said stock."

"5th. Whether in the event that *Lucy A. Stark,* widow of said testator, elects to take securities in lieu of cash in satisfaction of the bequest in her favor under item 4 of said will, she is entitled to take securities of the par or face value of $25,000 or securities of the actual or market value of $25,000."

"This question is answered above by the answer of the court to the fourth question propounded by said executors.

"The court further finds that *Charles Edward Stark,* grandson of Dr. Theodore F. Stark, under all the facts and circumstances surrounding the entire will, and by the express terms of the will, does not take by right of representation, and therefore the fifteen thousand dollars ($15,000) bequeathed under

item 9 to Dr. Theodore F. Stark should be equally divided between *Julia May Stark* and *Theodora Stark,* the children of Theodore F. Stark who were living at the time of the death of the testator, Charles G. Stark.

"The court further finds that under item 16 of said will, which reads as follows: 'I give and bequeath the sum of three thousand dollars ($3,000) to each of my nephews and nieces who shall be living at the time of my death,' which was increased to five thousand dollars ($5,000) by codicil to said will bearing date February 7, 1905, the words 'who shall be living at the time of my death' can have no other significance than that the nephews and nieces living at the time of testator's death should inherit thereby; under which construction said *Charles Edward Stark,* the grand-nephew of the testator, is barred from inheriting by right of representation of his deceased father, and Gertrude McCoy, Bessie King, and Alice Sidford are barred from inheriting by right of representation of their mother, Alice Smith.

"The foregoing construction of item 16 disposes of the contention that the said *Charles Edward Stark* and the said three daughters of Alice Smith are entitled to take by right of representation shares of the residuary estate under item 22 of the will, as modified by codicil bearing date February 18, 1908; and the court finds that neither said *Charles Edward Stark* is, nor the said three daughters of Alice Smith are, entitled to take any portion of said estate under item 22 or under any other item of said will.

"The court further finds that the executrix and executors, as trustees, and their successors, should during the life of *Lucy A. Stark,* the widow, retain in their hands out of the residuary personal estate property of the value of twenty-five thousand dollars ($25,000), which they are authorized to invest and reinvest in such investments as trustees are by statute authorized to make, and out of the income therefrom, and if necessary out of the principal thereof, to defray the expense of all taxes as the same are annually assessed and levied on testator's homestead, and all expenses for necessary repairs of the same, for the use and benefit of the widow during her lifetime, while enjoying the use and occupation thereof, and upon her death to account to the court for the residue of the fund thus retained in their hands; but dividing and distributing, annually, surplus income, if any, as hereinbefore directed.

"That the acts of the executors in paying the various legacies and in permitting the selection of said bank stock by said *Lucy A. Stark* under item 4 of said will, as found in findings of fact numbered 11, 12, and 13, were proper and legal; and that the executors should deliver the said certificates of deposit, together with accrued interest thereon, to the said *Lucy A. Stark,* taking her receipt therefor, in full performance of said item 4 of said will."

Judgment was entered in accordance with these conclusions.

*Lucy A. Hayt Stark,* individually and as executrix, appealed from those parts of the judgment providing (1) that the residuary estate should not be kept intact during the lifetime of the widow; (2) that $25,000 only of the residuary estate be retained and invested as a fund to carry out the testator's instructions with reference to his homestead, and the surplus, if any, of the income therefrom be annually distributed to the residuary legatees; (3) that the words "then living" in item 22 of the will relate to the date of the death of the testator, and hence that the residuum of the estate is to be divided among the children of testator's brothers and sisters living at the time of testator's death, except *William Stark Smith.*

*Theodora Stark,* a minor, and *Julia May Stark,* children of the predeceased brother, Theodore F. Stark, and *Frank G. Stark* and *Kate A. Inbusch,* children of Joshua Stark, and *Charles E. Conde,* a nephew, appealed from that part of the judgment which permitted the widow, under item 4 of the will, to take sixty-two shares of stock in the National Exchange Bank of Milwaukee, and one hundred and eighty-eight shares of stock in the Wisconsin National Bank of Milwaukee, as "securities" at their face value of $25,000, when they were in fact worth $52,564, also from that part of the judgment which directs that the executors retain $25,000 and keep the same invested to defray taxes and repairs upon the homestead.

*Charles Edward Stark,* a minor son of Charles Edward Stark, a nephew of the testator and son of Theodore F. Stark,

who died in February, 1895, appealed from that part of the judgment which denied his right to share as legatee under the provisions of items 9, 16, and 22 of the will, as well as from that part of the judgment which allowed the widow to select bank stock as securities at its face value in discharge of the $25,000 legacy.

On behalf of *Lucy A. Hayt Stark,* individually and as executrix, there were briefs by *Carpenter & Poss;* on behalf of *Theodora F. Stark,* a minor, *Frank G. Stark, Kate A. Inbusch,* and *Julia May Stark* there were briefs by *Robert N. McMynn,* as guardian *ad litem* of *Theodora F. Stark,* and *Harper & McMynn,* attorneys, one of said briefs being also adopted and submitted on behalf of *Charles E. Conde* by *Julius E. Roehr,* his attorney, and adopted in part and submitted on behalf of *Mary L. Spencer* and *Carrie A. Smith* by *William W. Wight,* their attorney, who also submitted a separate brief; and on behalf of *Charles Edward Stark* there was a brief by *W. H. Timlin, Jr.,* guardian *ad litem,* and *Patrick W. Dean,* of counsel. The cause was argued orally by *Paul D. Carpenter, Benjamin Poss, Robert N. McMynn, William W. Wight,* and *W. H. Timlin, Jr.*

WINSLOW, C. J. The appellant *Lucy A. Hayt Stark* makes certain objections to the validity of the appeals from the county to the circuit court taken on behalf of *Theodora Stark, Frank G. Stark, Kate A. Inbusch,* and *Julia May Stark* and *Charles E. Conde* jointly, and on behalf of *Charles Edward Stark* individually, and these objections will be first briefly considered. It appears that the judgment of the county court was entered June 23, 1910, and *Lucy A. Hayt Stark* seasonably appealed, but no appeal was taken on behalf of said joint appellants within the sixty-day period prescribed by sec. 4031, Stats. (1898), because they and their attorney were of opinion that the appeal of the widow took the entire matter to the circuit court to be tried *de novo,* and hence that

no other appeal was necessary. After the trial commenced in the circuit court, however, on December 19, 1910, they became convinced that they could not raise the objections which they wished to raise to the judgment below without taking an appeal themselves, and they made application in open court, upon affidavit showing the facts, for leave to take such appeal immediately, all parties being present, and all consenting thereto, except *Mrs. Stark.* The court, however, overruled her objections and made an order allowing the appeal to be taken at once, and it was perfected on the following day. The statute which gives the circuit court power to thus enlarge the time for appealing, and permits an appeal to be taken after the sixty-day period has expired, requires that the petition therefor must be filed within one year, and that it shall not be allowed without reasonable notice to the adverse party. Sec. 4035, Stats. (1898). The only question here is whether the notice was reasonable. While the notice was short, we are unable to say that it was not reasonable. Under some circumstances, perhaps, it would not be reasonable to allow an appeal to be taken on oral notice in court as this was allowed, but no special circumstances appear here to condemn the action of the court. The trial of the case was continued to a later date and not finally concluded for several months. No showing of surprise or hardship is made; and it seems to have been in furtherance of justice to allow all substantial and *bona fide* contentions concerning this important will to be fought out on the merits at the same trial.

The objection to the appeal of *Charles Edward Stark,* a minor, is of a different nature. In this case the guardian *ad litem* gave the notice of appeal seasonably, but was under the impression that under sec. 4032, Stats. (1898), which relieves certain personal representatives, including guardians, from giving bonds upon their own appeals, no bond was necessary in case of an appeal by the minor. He did not discover his error until the trial of the appeals had begun, and then filed

a bond in due form in the county court, which was returned at once to the circuit court. It is stated in the brief that it was filed in the circuit court with the approval of the trial judge, but we have found no statement to that effect either in the record or the bill of exceptions. It does appear, however, that the circuit court proceeded with the trial of the case in all respects as if the infant's appeal had been properly taken, and tried and determined the issues raised thereby, and we must conclude that the court impliedly, if not expressly, approved of the procedure followed. This court has already held that the appeal in such cases is so far taken as to give the circuit court jurisdiction by the filing of the notice of appeal within the required limit of time, and that when such a notice has been given the bond may be perfected after the sixty-day period, and the default in the timely filing of the bond may be waived by proceeding to trial without objection, or may be cured by order of the appellate court allowing such belated filing, in analogy to the construction which has been given to the statutes regulating appeals to this court. *Charmley v. Charmley,* 125 Wis. 297, 103 N. W. 1106.

Both appeals are therefore held to be effective.

The most important question in the case arises on the appeal of *Mrs. Stark,* and concerns the meaning and effect of that part of item 22 of the will which disposes of the residuum of the estate. The trial court held in effect that it was the intention of the testator that, after the specific devises to the widow had been paid and the $250,000 fund for the widow's support had been set aside in the hands of the trustee, and a sufficient sum reserved, the income of which would discharge the taxes and needed repairs on the homestead, the balance then in hand should be at once divided among the residuary legatees, such legatees being the children of the testator's brothers and sisters who were living at the time of the testator's death. This construction results in the creation of a series of residuums, or perhaps what might be called a resid-

uum in parcels. First will be the residuum to be distributed after the payment of the bequests to the widow, the setting aside of the $250,000 trust fund and the $25,000 fund to care for the homestead. Presumptively this distribution will take place very soon after the debts are ascertained and paid. Next will come the distribution of the $55,000, which under items 5 and 6 of the will, as changed by the second and third codicils, is to become "a part of the residuary estate" upon the death of *Mrs. Stark;* and next, in case of default in meeting the conditions, will come the distribution of the funds bequeathed to the children's hospital, which last distribution will take place four years after the death of *Mrs. Stark.* In the meantime there may be several small distributions under the decree of the court by reason of the fact that the court held that, if there should be any surplus income derived from the $25,000 fund after payment of taxes and necessary repairs on the homestead, the same should be distributed to the residuary legatees. The question is whether this is the proper construction of the will, or, in other words, was this the intention of the testator?

There can be no doubt that this construction gives an unusual, if not an absolutely new, meaning to the term "residuum" or "residuary estate." Residuum means what is left. Blackstone defines it as the surplus "when all the debts and particular legacies are discharged." 2 Bl. Comm. 514. It is otherwise defined as "that which remains of a decedent's estate after debts have been paid and legacies deducted." Black, Law Dict. (2d ed.) 1027. "The surplus of a testator's or intestate's estate after discharging all his liabilities; what remains after administration, properly so called, is concluded." 34 Cyc. 1662. See, also, to the same effect, *Robinson v. Millard,* 133 Mass. 236; Bouv. Law Dict. title "Residue;" *Morgan v. Huggins,* 48 Fed. 3.

However, if the testator intended that there should be a number of residuums, to be distributed from time to time as

they occurred, his intention should, of course, be carried out, and to discover what his intention was in this regard is the first duty.    In considering this question a review of the testator's situation and the circumstances surrounding him will be helpful.    At the time the original will was made, May 27, 1902, the testator had reached a ripe age and had amassed a considerable fortune.    He was evidently an exact and methodical business man, who had thought out a scheme for the disposition of his estate.    He was married, but had never had children or adopted children, but he had brothers and sisters who had been blessed with children, and these were, of course, the natural objects of his bounty, at least after due provision for his widow.    The amount of his fortune at this time does not appear, but at the time of his death, six years later, it amounted to nearly $700,000, so that it can probably be safely assumed that he was worth considerably more than half a million dollars at the time of the making of the original will. His wife was then sixty-three years of age.    Nothing appears as to the pecuniary circumstances of his brothers and sisters or their children.    Having determined to make his will, he called in an experienced lawyer to draft it for him.    It is said in one of the briefs that this lawyer was his friend, the late Charles E. Dyer, but the statement was withdrawn on the argument, because the evidence of the fact did not appear in the bill of exceptions.    The writer of this opinion has no doubt personally that Judge Dyer drew the will from the fact that an envelope is returned with the exhibits in the case which evidently contained the will when drawn, and which is indorsed, in Judge Dyer's unmistakable handwriting, "Chas. G. Stark's Will."    However, the question as to what lawyer drew the will is not of great moment.    It shows in every sentence and in every line that it was drawn by a lawyer of experience, who knew the meaning of legal terms, who prepared it carefully, and who used no words at haphazard.    These two men, the careful, painstaking, successful business man,

who had evidently laid out his scheme in his mind, and the equally careful and painstaking lawyer, who had spent his life at his profession, collaborated together and produced the will before us.

A mere reading of the will leaves no doubt that there was one idea which was paramount in the testator's mind, namely, the idea that his beloved wife was to be not only adequately but abundantly provided for during her whole life, so that there should be no possibility of her ever encountering want or privation. This paramount purpose is conclusively proven by the provisions made for her in the first five items of the will (which were afterwards substantially augmented by the second and fourth codicils, as the testator's estate grew), and by the twenty-fourth item, by which it appears that his thought returned lovingly to her at the very close of the will, and he again made it apparent that whatever happened to other legatees her interests were to be protected.

Second only to this paramount purpose was the purpose that there was to be no hasty closing out of the estate. Mr. Stark had doubtless spent many years in the amassing of this property. Nearly $200,000 in value thereof was in real estate. He contemplated the ultimate distribution of the bulk of his property among his blood relations, but, like most men who have made their own fortunes by gradual accumulations, he did not wish to see anything sacrificed. The property set apart for the use of his wife, which at the time probably reached well towards one half of the estate, must necessarily be kept on hand during her lifetime, and one half thereof, designed for the children's hospital, might have to be kept for four years after the wife's death. Ten or twelve years does not seem a long time for the prudent management and conversion of an estate which the testator has spent forty or fifty years in acquiring. The provisions of the will generally bear testimony to the desire of the testator to avoid haste, but if there were any doubt of such intention it would be removed

by the final clause of the will, where the testator expressly says that it is his wish that his executors have ample time to administer the estate, "so that no property, effects, or assets of my estate shall be unduly sacrificed by too speedy conversion of the same into money."

The object next in importance in the testator's mind was evidently a purely philanthropic one. He strongly desired to leave in the city where he had spent his life and amassed his fortune a monument to his memory in the shape of a children's hospital, which was forever to bear his name, and which was to be open "for the reception of such poor, neglected, and destitute children of the age of fourteen (14) years and under who are sick" as the managers should agree to receive.

At the time of the execution of the will the testator had one sister, Sarah J. Smith, and two brothers, Joshua Stark and Theodore F. Stark, still living, and these relatives naturally would be and in fact were the next subjects of his bounty. He therefore gave to them out of the $250,000 fund reserved for the wife's support $30,000 each, but it is important to note that these gifts do not take effect until after the wife's death, and hence might not be carried out for a number of years. As if to make up for the probable long delay in the realization of these bequests, he then makes immediate gifts of $15,000 each to the same legatees, or to their children if the original legatees do not survive the testator, and after making a number of small charitable bequests gives $5,000 to each of his nephews and nieces living at the time of his death. The testator then comes to his residuary estate, and after taking out of it two small bequests gives the balance to the "then living children of my brothers and sisters," excepting one to whom liberal allowances had already been made.

Now if the trial court was right in holding that this residuary bequest goes into effect at once, not only is the result anomalous in that residuary legatees step into beneficial en-

joyment of their legacies long before specific legatees, but also
in that the nephews and nieces of the testator, who were evi-
dently last in the testator's thought, are given preference in
point of time to their parents, the brothers and sisters of the
testator, who, though advanced in years, are forced to wait
for possession of the major portion of their legacies until the
death of the wife.

Of course, the testator could do these things if he chose,
but if there be doubt as to the intention the improbability of
his desiring to do them is significant.

There can be no doubt that the testator had in his mind a
definite time when the residuary clause was to take effect.
Some event was in his mind when he used the words "then
living." Was that event his own death, as the trial court
found? We cannot think so.

The will bears every mark of the careful lawyer's hand.
Words were not used carelessly or unadvisedly. The scriv-
ener knew just how to express every idea in exact legal phrase.
It contains numerous exact conditions and limitations over.
Many gifts are made to take effect "upon the death of my said
wife," some to take effect if the legatee "shall survive me," or
"shall survive my said wife," and some to legatees "living at
the time of my death." The scrivener was exact in every
expression until he came to this clause, at least. Did he then
suffer a mental lapse and use words thoughtlessly and unad-
visedly? We think not.

It is true that there is no event like the death of a life ten-
ant, or the like, specifically mentioned in item 22 to which the
word "then" can be referred, but we are well satisfied that
there was an event in the mind of the testator and the scriv-
ener, and we are further satisfied that such event was not the
testator's death, for when there had been occasion to refer to
that event in the prior clauses of his will it had been referred
to in unmistakably accurate language. What event, then,
was it? To our minds it seems certain that it was the final

completion or determination of the amount of the residuary estate, either by the full performance of the conditions on which the legacy to the children's hospital was based or by the dropping into the residuary fund of that legacy by reason of nonperformance of the conditions. Under the scheme of the will this was the last contingent event which was to take place. All specific legacies, save the two contained in the residuary clause, were expected to be fully carried out and completed before the determination of the fact whether the children's hospital legacy was to be effective or not, and when that fact was determined then it was known for the first time what the residue in fact was, and the "balance" to be divided was first determined. This was the event which was to fix the "balance," and this was the event which would naturally be chosen to fix the partakers in the "balance."

If this conclusion were to be considered doubtful under the language of item 22, considered by itself, it seems that all doubt must be removed when that part of item 6 which provides for the legacy to the children's hospital is considered. By reference to this item it will be seen that $125,000 is placed in trust for the benefit of the hospital upon condition that the hospital association shall be incorporated and shall have contracted for the erection of a $50,000 building within four years after the wife's death, and that in the event of the failure to comply with these conditions the entire bequest is "to pass into and become a part of the residue of my estate under the residuary clause of my will," and "be distributed *as a part of* the residue of my estate in equal portions, share and share alike, to the *then* living children of my brothers and sisters."

These clauses are very significant in two respects: *first,* as tending to show that the testator contemplated one entire residuary fund, of which the lapsed legacy was to become a part, and not three or four separate residuary funds, of which the lapsed legacy was to be the last of the series; and *second,*

but of far more importance, as showing conclusively that when the words "then living children" were used in this provision they referred definitely and certainly to the event of the failure on the part of the hospital association to comply with the condition, and cannot reasonably be construed as referring to any other event.

In a will where every clause bears the impress of the experienced lawyer's work; where apt phrases have been carefully used prescribing what shall take place in many and various contingencies; and where the same phrasing has been twice used and may well bear the same construction in both places, the fact that it must have a certain construction in one place is certainly very persuasive as a consideration for placing the same construction on it in another place. We have no hesitation, therefore, in holding that the will contemplates but one residuary estate, which is not to be distributed until it be determined that the bequest to the children's hospital has become absolute or has lapsed, and that it is then to be distributed to the children of the testator's brothers and sisters (except *William Stark Smith*) who shall be living at the time of the happening of that event.

There are other persuasive considerations which lead to the same result. Thus, the will and codicils refer several times to "the residue of my estate," and "my residuary estate," always as one definite thing. Now if an experienced lawyer were drawing a will which contemplated such an unusual thing as residuums in relays, or rather a residuum which was only nominally such, but really a receptacle to be at intervals replenished and drained off, it seems passing strange that he should not have definitely provided in unmistakable terms for such replenishments and distributions. The will, however, does no such thing. Notwithstanding the consummate care which is noticeable in every clause, there is no hint of any desire or intention to create a number of successive funds. In this connection it is significant to notice the language of

the first and twenty-second items, concerning the payment of the taxes and repairs on the homestead. In the first item it is directed that these amounts "be paid from the residue of my estate after providing for the specific devises, bequests, and legacies hereinafter mentioned." In the twenty-second item it is provided that "all the rest, residue, and remainder of my property, of every name and nature, wherever situated, after providing for the devises, bequests, and legacies hereinbefore mentioned and after the use of so much thereof as may be necessary to defray the expense of taxes on my homestead and of keeping the same in repair for the use and benefit of my wife as provided in the first item of this my will, I give, devise, and bequeath as follows," etc. In both places the residue is described as what may remain "after" providing for the specific devises, bequests, and legacies. Now, the word "after" does not always denote subordination in time, but may indicate merely subordination in right. Ordinarily, however, it is used to denote subordination in time, and we see no sign here of an intention to use it otherwise than in its usual sense. Furthermore, the fact that in both places the residue seems to be referred to as one constant, continuing fund, out of which the taxes and repairs are to be defrayed, strengthens the idea that the word "after" is used here in its ordinary meaning.

Again, the testator by the third codicil to his will increased the immediate gifts which he had made to his nephews and nieces "living at the time of my death" from $3,000 to $5,000 each. This is significant in two ways: *first,* it shows how exactly the testator spoke when he desired to make bequests to his nephews and nieces who were living at the time of his death, and thus rebuts the idea that he used the words "then living" as meaning the same thing; and *second,* it would be really useless to make this gift at all, if the residuary clause were to have the construction claimed for it by the respondents, because without it the same beneficiaries would receive

the same money at practically the same time in their capacity
as residuary legatees.

It is objected that the idea of keeping intact so large a fund
for a number of years, and thus unnecessarily depriving the
residuary legatees of its beneficial use, is fantastic and unjust
to the beneficiaries, but this argument can have little weight.
The testator could do what he would with his own; his
nephews and nieces had no rights save such as he chose to
give them.   If in the excess of his solicitude for his wife's
welfare he chose to impound for years his hardly-earned prop-
erty to an unnecessary degree, they have really no cause to
complain.   The testator may have been over-cautious, but he
did no injustice to any one by being over-cautious with his
own property.   It being determined that the testator intended
that there should be one residuum, and not a series of recur-
ring residuums, and that the one residuum is bequeathed to
those nephews and nieces who shall be living at the time the
hospital trust fund is either earned or forfeited by the hos-
pital association, the question as to the disposition of the ac-
cumulated rents and profits resulting from the residuary es-
tate during this period of waiting becomes important.

It is suggested that under the terms of the will the whole
estate may be regarded as equitably converted into personal
property, and that the will must be treated as a will dealing
only with personal property.   This would be true if the
scheme of the will could not reasonably be carried out without
the conversion of the real estate into money.   *Becker v. Ches-*
*ter,* 115 Wis. 90, 91 N. W. 87, 650.   But it seems to be very
clear that there is no such situation.   There was in the estate
somewhat less than $200,000 worth of real estate, exclusive
of the homestead.   It is not claimed that it will be necessary
to dispose of any of this real estate in order to discharge the
specific legacies of every kind and provide for the payment
of the taxes and repairs upon the homestead.   On the con-

trary it seems entirely certain that the personal estate is much more than sufficient to meet all said demands. Under such circumstances the fiction of equitable conversion cannot be indulged in, especially in the absence of any definite provision in the will looking in that direction. On this subject it is very significant that the will gives very full and explicit authority to the executors to sell and convey the homestead after *Mrs. Stark's* death, but is absolutely silent as to any other conveyance. Evidently the testator did not expect that any other conveyance would be necessary. This conclusion is strengthened also by the fact that at the very beginning of the residuary clause he speaks of "All the rest, residue, and remainder of my property, of every name and nature, both *real* and personal, wherever situate," etc. This would indicate that he had not contemplated that the real estate would be necessarily converted into money prior to the going into effect of the residuary clause.

If he expected the real estate to remain intact, he must have expected also that there would be rents and profits coming in year by year, for much of the real estate was rented and bringing in a profitable income. He gave no specific directions for the disposition of this income, except such small amount as might be necessary to discharge the taxes and repairs upon the homestead, and these must, of course, be discharged out of the personal estate before resorting to the real estate or the rents therefrom. He must be deemed, therefore, by his silence to have directed that it accumulate. *Scott v. West,* 63 Wis. 529, 578, 24 N. W. 161, 25 N. W. 18. As to accumulations resulting from the income of personal estate, there is no legal objection to such a direction (*Scott v. West, supra*); but our statutes do not permit accumulations of the rents and profits of real estate except for certain specified purposes and uses, which are not present here. Secs. 2060–2063, Stats. (1898).

What then shall be done with the rents and profits of the real estate? That depends upon the question, Who is presumptively entitled to the next eventual estate in the lands?

Sec. 2064, Stats. (1898), provides that "when, in consequence of a valid limitation of an expectant estate, there shall be a suspension of the power of alienation or of the ownership, during the continuance of which the rents and profits shall be undisposed of and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumptively entitled to the next eventual estate."

It seems that this section undoubtedly applies to the present case. The estate of the present living nephews and nieces of the testator is an estate in expectancy under sec. 2033, Stats. (1898), and of the class denominated future estates "limited to commence in possession at a future day, either without the intervention of a precedent estate or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time." Their estate is of the first class of future estates above named, because it commences at a future day without the intervention of a precedent estate. Such a grant is valid. *Ferguson v. Mason,* 60 Wis. 377, 19 N. W. 420. It fulfils all the calls of sec. 2064, *supra.* It is an estate in expectancy; there is a valid limitation upon it in consequence of which there is a suspension of the power of alienation, if not in fact of ownership, during one life in being and possibly four years thereafter; the rents and profits during that time are undisposed of; and no valid direction for their accumulation has been given. Until, therefore, the residuary legatees become absolutely fixed by the earning or forfeiting of the hospital bequest, the living nephews and nieces are presumptively entitled to the next eventual estate, and hence to them belong the rents and profits of the real estate, except such part as may possibly be necessary to defray the taxes and repairs upon the homestead, and this contingency seems very remote, as the personal estate must first be resorted

to for that purpose. This will necessitate keeping separate accounts of the income from the personal estate and of the income from the real estate, and making periodical distributions of the real-estate income to the presumptive residuary legatees.

As to the joint appeal on behalf of *Theodora Stark* and four others a few considerations will suffice.

Their first contention is that under item 4 of the will the widow could not select certificates of bank stock, because they are not "securities," and that if she can do so she must take the stock at its actual value instead of at its face.

We think the trial court was right upon both these questions. While the word "securities," construed strictly, does not cover corporate stock, but rather bonds or evidences of debt, it has undoubtedly acquired a much broader meaning by general usage. It is said in 25 Am. & Eng. Ency. of Law (2d ed.) at page 180, "The term in its broadest sense embraces bonds, certificates of stock, promissory notes, bills of exchange, etc." The Century Dictionary defines "securities" as "evidences of debt, or of property, as a bond or certificate of stock." See 1 Cook, Corp. (6th ed.) secs. 14 and 305, to the same effect. Indeed it may be said, we think, to be matter of common knowledge that the word is generally used in this broad sense.

The testator at the time of his death possessed both stocks and bonds in good measure. The stocks were most valuable. It was his evident intention to give his wife the opportunity to take instead of cash something which was more valuable than the cash, if she chose. Nothing indicates any intention to limit her in her choice to the less valuable class of papers which are ordinarily called "securities," and we hold, therefore, that the court rightly held that she might choose bank stock as she did. Nor do we see any good reason to doubt that when the testator used the term "par value" he meant "face value," as the trial court held.

Their second contention is that the sum of $25,000 is too large a sum to set aside out of the residuary estate to provide for the payment of the taxes and repairs on the homestead. Inasmuch as we have held that the entire residuary estate is to be kept intact, this contention necessarily falls.

The appeal of *Charles Edward Stark,* a minor son of Charles Edward Stark, deceased, will be briefly considered. This minor was a grand-nephew of the deceased; his father died in 1905, and his grandfather (Theodore F. Stark, brother of the testator) in 1904, both dying before the testator. He claims to be entitled to share in his father's right in the legacies given by the ninth, sixteenth, and twenty-second items of the will.

The ninth item gives $15,000 to Theodore F. Stark (appellant's grandfather), but provides that in case he does not survive the testator said sum is to be given "to the children of said Theodore F. Stark who shall be living at the time of my death, share and share alike."

The sixteenth item gives $5,000 to "each of my nephews and nieces who shall be living at the time of my death."

The twenty-second item is the residuary clause, and gives the residue to the "then living children of my brothers and sisters."

No one of the terms used in either of these items includes the appellant in its accurate sense. He is not a child of Theodore F. Stark, nor a nephew of the testator, nor a child of the testator's brother or sister. It is true that the word "child" is sometimes properly construed as applying to a grandchild, and nephew may be held to cover grand-nephew, but when such a construction is given the reason is that the evident purpose of the testator demands it.

In the present case there is no such reason. On the contrary, the care with which the will is drawn and the uniform precision of its expressions forbid any such latitude in construction. There are two clauses in the will where express

provision is made for children to take the share of a parent in case of the death of such parent prior to the happening of a given event, and in each case the most accurate and complete legal phraseology is used to express the idea. In view of these considerations, we have no hesitation in affirming the trial court's conclusions on the points presented by this appeal.

The judgment must be modified in accordance with this opinion so as to determine that the residuary estate shall remain undistributed until the time when the trust bequest to the children's hospital shall be earned or forfeited, at which time the residuary estate becomes vested in the then living beneficiaries named in the twenty-second item; that the surplus income, if any, of the residuary personal estate, past and future, over and above the sums required to pay the taxes and repairs on the homestead, be added to the general residuary estate; that the net income already derived from the residuary real estate be distributed to the present presumptive residuary legatees at once, and that the future income (except in case some part be necessary to defray taxes and repairs on the homestead) be annually distributed to the presumptive residuary legatees until the time when the amount of the residuary estate is determined and the status of the beneficiaries fixed as above set forth. In all other respects the judgment is correct.

*By the Court.*—The judgment is modified as indicated in the opinion, and as so modified is affirmed. All parties who printed briefs and appeared by counsel in this court will be entitled to tax their statutory costs, to be paid out of the estate.

TIMLIN, J., took no part.