WILL OF SCHILLING: SCHILLING and others, Respondents, vs. SCHILLING and another, Executors, Appellants.

*May 14—June 12, 1931.*

260

262

For the appellants there was a brief by *Schubert & Stevenson* and *Lees & Bunge,* all of La Crosse, and oral argument by *Geo. W. Bunge.*

For the respondents there was a brief by *Hill & Miller* of Baraboo and *Fred Steele* of La Crosse, guardian *ad litem,* for Wm. Schilling, and oral argument by *James H. Hill.*

NELSON, J.   The county court, as clearly appears from its findings of fact, conclusions of law, and decision, based its order construing the will of Isidor Schilling, deceased, upon the following conclusions of law which are claimed by appellants to be erroneous:

1. That ch. 287 of the Laws of 1925, now sec. 230.14, Stats., amended not only said section as it theretofore existed but also sec. 230.37 of the Statutes, which had the effect of prohibiting both accumulations of rents and profits of real estate except as therein specifically provided, and also accumulations of income from personal property except as

is therein provided for the accumulations of rents and profits of real estate.

2. That because ch. 287 of the Laws of 1925 amended sec. 230.37, as hereinabove stated, it became unnecessary for the court to determine whether the whole estate, under the terms of said will, should be treated as personal property under the doctrine of equitable conversion.

3. That sec. 230.40 was applicable to the situation created by the terms of said will and that Alice Schilling Mould was one of those presumptively entitled to the next eventual estate, and that, since any accumulation was void as to her when she became twenty-one years of age (she having attained to that age), she was then presently entitled to a one-fourth part of the accumulated income and would be entitled, in the future, to a one-fourth part of the income from such one-fourth share remaining after paying to Ella Schilling, the widow, the sum of $150 a month until the death or remarriage of the latter; that William Schilling was one of those presumptively entitled to the next eventual estate and the income as to him was not void until the expiration of his minority, at which time he would be entitled to three fourths of the accumulated income and three fourths of the annual income thereafter, after paying to Ella Schilling the said sum of $150 a month until her death or remarriage.

Did ch. 287 of the Laws of 1925 amend both secs. 230.14 and 230.37? Ch. 287 of the Laws of 1925, including its title, is as follows:

CHAPTER 287.

"An Act to amend section 230.14 (2038) of the statutes relating to the limit of suspension of the absolute power of alienation of real and personal property.

"*The People of the State of Wisconsin, represented in Senate and Assembly, do enact as follows:*

Section 1. Section 230.14 (2038) of the statutes is amended to read: 230.14 (2038). Every future estate shall

be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed. Limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property; provided, however, that this limitation upon interests in personal property shall not apply to any instrument which shall have taken effect prior to July, 1925."

Prior to the enactment of ch. 287, Laws of 1925, sec. 230.14 (2038), Stats., was as follows:

"230.14 (2038) Every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed."

This section was enacted in 1849 and was borrowed from the state of New York (Rev. Stats. N. Y. 1836, title II, art. First, sec. 14), which state had, at that time, a similar statute relating to personal property (*Ibid.*, title IV, sec. 1). Much controversy arose in this state as to whether this statute, sec. 2038, as it existed prior to 1925, included within its scope personal property, and whether, if it did not include personal property, the common law as to perpetuities in personal property was in force in this state. In *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103, decided in 1879, it was held, in an opinion by Mr. Chief Justice RYAN, that our statute did not apply to personalty and that the enactment of that statute abrogated the English doctrine applicable to personalty. The court said (p. 96): "But were this otherwise, the statute limiting the rule against perpetuities to realty manifestly abrogates the English doctrine as applicable to personalty. . . . (Page 97): The bequests in this will must therefore be considered as bequests of

personalty only. And for that reason, if for no other, the bequests to charitable uses are unaffected by the statute of perpetuities or the statute of uses and trusts."

Five years later in *De Wolf v. Lawson,* 61 Wis. 469, 21 N. W. 615, this court referred to the views expressed in *Dodge v. Williams, supra,* to the effect that our statute limiting the rule against perpetuities to realty abrogated the English doctrine as applicable to personalty, saying (p. 474) :

"There can be no question but the statute refers to real estate alone. It may, however, admit of doubt whether the remark of the Chief Justice is strictly accurate in saying that it abolishes the common rule of perpetuities as to personalty when applied to private trusts."

Again in *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345, it was intimated that the language of the court in *Dodge v. Williams* was unnecessary to the decision. This court, however, said, in reference to the holding in that case (p. 493) :

"Whether such is the settled law, so as not to be open for discussion, need not be decided in this case. Where a question affecting property rights has been judicially settled so long as to have become a rule of property, for the courts to disturb it, even if settled wrong at the start, would be a greater wrong than the original mistake; and in such circumstances the maxim *Stare decisis, et non quieta movere,* should be pretty rigorously applied."

Still later on, in *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650, the holding in *Dodge v. Williams,* and subsequent decisions, was painstakingly reviewed, the court concluding (p. 130) :

"Now we have gone over the history in this state of the subject of whether we have the common-law rule as to perpetuities respecting personalty, and have seen that, instead of a mere passing remark or individual expression of opinion by the Chief Justice in *Dodge v. Williams,* on the subject, we have the deliberate judgment of the court, estab-

lishing the law for this state. It has stood as so established, though somewhat clouded, it is true, by intimations indicating ·that the way was open for a reconsideration of the matter, without change for twenty-three years—long enough to be regarded as a rule of property and safe from danger of change except by legislative enactment. Whether the decision was right or wrong, to disturb it now by mere judicial power would be a far greater mistake than the making thereof, if it were clearly erroneous. When such a question has been so long settled as to have become firmly impressed upon property, the maxim *Stare decisis, et non quieta movere,* should be regarded as a governing principle in respect thereto. . . . (Page 131) : We have come to the conclusion, upon the most careful consideration of the matter, that whether it was here decided right or wrong, the decision has remained undisturbed so long that it ought to be given the force of a statute, leaving any change of policy that may be desired to be effected by the legislature."

From the carefully considered opinion by Mr. Justice MARSHALL, Mr. Chief Justice CASSODAY vigorously dissented, not because of the result reached but because of the reaffirmation of the doctrine found in *Dodge v. Williams.* In *Danforth v. Oshkosh,* 119 Wis. 262, 97 N. W. 258, the various decisions above mentioned were again referred to and the court again said that neither the statute nor the common law in this state prohibits perpetuities in personalty.

Whether the original decision of this court in *Dodge v. Williams* was sound is not material now, since the enactment of ch. 287 clearly amended the statute which had been repeatedly construed to apply only to future estates in realty, so as to make it clearly applicable to future or contingent interests in personal property. A review of the decisions construing sec. 230.14 as it existed prior to its amendment in 1925 has been deemed advisable for the purpose of showing that doubts as to its construction were from time to time raised, that heated controversy as to its proper construction and applicability was waged, and that this court,

in *Becker v. Chester,* considered that a change in the law could be brought about only by the legislature. The dissenting opinion of Mr. Chief Justice CASSODAY, above referred to, clearly shows that the main purpose of his dissent was to call to the attention of the legislature the existing situation brought about by the decisions of this court. He plainly characterized his dissent as an attempt to expose in a respectful manner what he regarded as a "legal monstrosity," in the hope that the legislature might do something to relieve the state of Wisconsin from being the only state in the Union where personal property may be given in trust for a private purpose and rendered inalienable for all time. From all of the foregoing it appears to be quite clear what the legislature sought to do by enacting ch. 287 of the Laws of 1925.

Sec. 230.37, Stats., on the other hand, has given rise to no controversy as to its intent and meaning. It has always been construed to apply only to accumulations of "rents and profits of real estate." In *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18, it was said, in a carefully considered opinion by Mr. Justice CASSODAY, who so vigorously dissented in *Becker v. Chester, supra* (p. 585) :

"But what has been said in reference to illegal accumulations applies only to rents and profits of real estate, whether such as the testator owned at the time of his death, or such as have since been, or may hereafter be, purchased by the executors. Our statutes do not extend to accumulations from personal property. Notwithstanding the real and personal property is given by the same clause of the will and upon the same trusts, yet they are severable, and the validity of the one does not depend upon that of the other. *Knox v. Jones,* 47 N. Y. 389."

Again in *Will of Stark,* 149 Wis. 631, 655, 134 N. W. 389, it was stated:

"As to accumulations resulting from the income of personal estate, there is no legal objection to such a direction (*Scott v. West, supra*) ; but our statutes do not permit

accumulations of the rents and profits of real estate except for certain specified purposes and uses, which are not present here. Secs. 2060–2063, Stats. (1898)."

No question as to the soundness of so construing sec. 230.37 seems to have arisen in the minds of any member of this court as it was constituted at the time those cases were decided, for both opinions in the cases just mentioned were unanimously concurred in.

That sec. 230.37 applies only to accumulations of rents and profits of real estate seems so plain as to admit of no reasonable doubt. That section is as follows:

*"Accumulation of profits of lands.* An accumulation of rents and profits of real estate for the benefit of one or more persons may be directed by any will or deed, sufficient to pass real estate, as follows:

"(1) If such accumulation be directed to commence on the creation of the estate out of which the rents and profits are to arise it must be made for the benefit of one or more minors then in being and terminate at the expiration of their minority.

"(2) If such accumulation be directed to commence at any time subsequent to the creation of the estate out of which the rents and profits are to arise it shall commence within the time in this chapter permitted for the vesting of future estates and during the minority of the persons for whose benefit it is directed, and shall terminate at the expiration of such minority.

"(3) For the sole benefit of a literary or charitable corporation which shall have been organized under the laws of this state, but such accumulation must terminate upon the expiration of twenty-one years from the time when the same shall be directed to commence."

This section was also borrowed from the state of New York (Rev. Stats. N. Y. 1836, title II, art. First, sec. 37). It is significant that that state also had a similar statute specifically applicable to accumulations of income of personal property (*Ibid.,* title IV, sec. 3), which this state never

borrowed or enacted into our law. The failure of our legislature originally to borrow or to enact the New York statute relating to accumulations of personal property further supports the conclusion that the legislature never intended that accumulations of income of personal property should be prohibited. This conclusion seems unanswerable in view of the fact that the legislature has apparently accepted the construction placed upon sec. 230.37 by this court.

Referring again to ch. 287 of the Laws of 1925, it seems clear that it amended only sec. 230.14 and was not intended to amend or affect sec. 230.37. Its title speaks plainly as to its purpose—"An act to amend section 230.14 (2038) of the statutes relating to the limit of suspension of the absolute power of alienation of real and personal property." That its purpose was to amend only sec. 230.14 is reiterated at the very beginning of sec. 1: "Sec. 230.14 (2038) of the Statutes is amended to read: 230.14 (2038)." Sec. 230.14, by this act, was amended by adding to the statute as it theretofore existed, the following: "Limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property; provided, however, that this limitation upon interests in personal property shall not apply to any instrument which shall have taken effect prior to July, 1925." It seems clear that the purpose of this amendment was to apply to future estates or interests in personal property the same rules as had theretofore been applied by said section to future estates in real estate, to the end that both future estates in real estate and future or contingent interests in personal property shall be void in their creation which shall suspend the absolute power of alienation for a longer period than is prescribed by sec. 230.15, to wit, two lives in being and twenty-one years (now thirty years).

That this is the plain, reasonable construction which should be placed upon ch. 287 seems clear when the respec-

tive purposes of secs. 230.14 and 230.37 are considered. The purpose of sec. 230.14 is to prevent the creation of future estates which shall suspend the absolute power of alienation for a longer period than that prescribed by sec. 230.15. The purpose of sec. 230.37 is to prevent accumulations of rents and profits except in the certain cases therein mentioned. It is obvious that these two statutes deal with entirely different matters, although it might be held that if sec. 230.37 were not in existence sec. 230.14 would be effective by and of itself to prevent accumulations of income for a longer period than two lives in being and twenty-one years. In view of the fact that sec. 230.37 was enacted in 1849 and has been construed by two decisions of this court, and that it relates to a subject matter quite distinct from that dealt with in sec. 230.14, we conclude that no intention of the legislature to amend it by enacting ch. 287 can be spelled out of that enactment. It is, of course, the duty of this court to ascertain if possible the intent of the legislature in enacting a given statute and then to give it force and effect. Had the legislature intended to amend sec. 230.37 in the manner claimed, it would have been a simple matter so to do. In order that an enactment may be held to prohibit accumulations of income of personal property which have been specifically approved by the decisions of this court, it ought at least clearly to appear that such was the intention of the legislature. Wills involving personal property and providing for the accumulation of income therefrom until a child or children attain to the age of twenty-five or thirty years are quite common. It is exceedingly doubtful that the legislature would ever consent to the prohibition of such accumulations, yet, if ch. 287 amended sec. 230.37 as contended by respondents, such accumulations are even now prohibited by law. We cannot bring ourselves to accept any such view. We conclude that ch. 287 of the Laws of 1925 did not amend sec. 230.37.

Do the terms of this will evidence an intent on the part of the testator that all of his property should be treated as personalty, and justify the application of the doctrine of "equitable conversion" to the whole corpus of the trust estate regardless of the fact that a substantial part thereof is real estate? The doctrine of equitable conversion has an important bearing upon this controversy in view of the conclusion we have reached that ch. 287 did not amend sec. 230.37 of the Statutes. While the will does not positively direct that the real estate shall be converted into personalty by the executors, it does justify the conclusion that such was the evident intent of the testator. The will provides that all of the remainder of his estate, after paying his debts, funeral expenses, expenses of administration, and the bequests aggregating $60,500, shall be held in trust and the income therefrom distributed to his four sons and, in case of their deaths, to their respective families. The will further provides that in case Gustav H. Schilling shall be living at the end of twenty years after the death of the testator the trustees shall "give and assign to him one fourth of the both of my estate then on hand." Identical provisions as to Adolph J. and Albert J., two of the other sons, are found in the will. The language "give and assign" is not without significance. The failure to use the words "deed or convey" pretty clearly shows that it was the intent of the testator that his trust estate, at least at the end of twenty years from the date of his death, should be in a condition to permit the trustees to "give and assign" to each of the three sons then living a one-fourth part thereof. In order that the trustees may, at the end of twenty years, "give and assign" a one-fourth part of the trust estate to such of the testator's sons as are then living, it seems clear that the testator intended that his trust estate should at that time be in such a condition as to permit a division to be made. Paragraph 9 of the will, hereinbefore quoted in full, considered without ref-

erence to the other parts of the will, gives only discretionary authority to dispose of the real estate, and that paragraph taken by itself alone would not be sufficient to work an equitable conversion. *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650, wherein it is said (p. 117) : "A mere optional or discretionary purpose to convert—that is, discretionary authority as to whether to convert or not—is not sufficient. There must be a mandatory direction, express or implied, to convert; but the time of the execution of the purpose may be left discretionary." In *Cawker v. Dreutzer,* 197 Wis. 98, 221 N. W. 401, it was held that the testator therein intended that his real estate should be converted into personal property and that the will worked such conversion as of the moment of his death although there were no express provisions of the will commanding the executors to sell the real estate or to convert it into personal property, the will providing, however, for some large cash disbursements and the division of the estate into two equal or equivalent parts to be held in trust and the income therefrom to be paid over to the beneficiaries named, during their lives. In *Given v. Hilton,* 95 U. S. 591, it was held that the blending of real estate and personal property in one fund for all the purposes of the will is generally regarded as evidencing an intent that the whole estate shall be treated as personal property even though a necessity therefor does not exist, but such evidence is not conclusive on the question. Other Wisconsin cases dealing with equitable conversion are *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103; *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345; *Will of Stark,* 149 Wis. 631, 134 N. W. 389, and numerous cases cited therein. In *Greenman v. McVey,* 126 Minn. 21, 147 N. W. 812, is found an excellent discussion of the doctrine of equitable conversion. One of the questions involved in that case was as to when the equitable conversion became effective, whether at the date of the testator's death or at the

time of the ending of the life estate. The correct rule was stated to be as follows:

"Where the sale is directed to be made at some future time or upon the happening of a future event which is certain to happen, the general rule is still that the conversion is deemed to take place as of the date of the testator's death. *Underwood v. Curtis,* 127 N. Y. 523, 28 N. E. 585; 3 Pomeroy, Eq. Jur. § 1162."

The court, after citing authorities supporting the contrary doctrine, said:

"These are eminently respectable authorities and support plaintiff's right to recover in the case at bar. But, as we have stated, the great weight of authority is to the effect that when there is no discretion left in the executor as to whether a sale shall be made, and the time in the future when it is to be made is definitely fixed, or the event is certain to happen, the conversion takes place as of the date of the testator's death, and that this determines not only the rights of the legatees, but those of assignees or creditors of a legatee."

It is the conclusion of the court that the provisions of this will plainly indicate an intention on the part of the testator to have the properties belonging to his estate converted into personalty and that the doctrine of equitable conversion therefore applies, effective as of the date of his death.

Having concluded that the terms of this will require all of the property to be considered as personalty, under the doctrine of equitable conversion, and that sec. 230.37 was not amended by ch. 287, Laws of 1925, and in no way prohibits accumulations resulting from the income from personal property, or that which must be considered personal property, it becomes unnecessary to discuss respondents' contention that sec. 230.40 is applicable and resulted in the giving of one fourth of the accumulated income to Alice when she attained to the age of twenty-one years, and further resulted in her being entitled to one fourth of the income after paying Ella Schilling $150 per month until Ella Schilling shall die or remarry and William shall be twenty-

one years of age. On no theory can we reach the conclusion that Alice will be entitled to any part of the income unless Ella Schilling dies or remarries prior to the time that William Schilling has attained to the age of twenty-one years. The will specifically provides:

· "And in case of the death of the wife of said Ernest Schilling or in case she shall again marry, the entire income from said share shall be given to the children of said Ernest Schilling, one fourth of said income to be paid to Alice Schilling, daughter of said Ernest Schilling, and three fourths thereof to be paid to William Schilling, son of said Ernest Schilling."

This is the only provision of the will relating to the payment of any income to either Alice or William and obviously has no force or effect in the absence of the death or remarriage of Ella Schilling prior to the time when William Schilling attains to the age of twenty-one years, for the will further provides:

"When both Ernest Schilling and Ella Schilling, his wife, are dead, or when Ernest Schilling is dead and his wife shall remarry, and the youngest of said children shall be twenty-one years of age, then my trustees shall distribute said share of my estate as follows: To Alice Schilling, daughter of said Ernest Schilling, two thousand dollars ($2,000); and all of the remainder of said share shall go to my grandson, William Schilling, son of Ernest Schilling."

It is apparent from this will—paragraph 8 (f)—that the testator first intended that Ernest Schilling should have one fourth of the income from the trust estate so long as he should live; that in case of his death, Ella Schilling, wife of Ernest Schilling, should have such income during her natural life or so long as she remained a widow, not to exceed, however, the sum of $150 per month, to be used by her as she saw fit for the support of herself and children; that the remainder of said income, after paying the said sum of $150 per month to Ella Schilling, should be accumulated for the benefit of that portion of the estate put in trust for Ernest

Schilling and his issue; that in case of the death of Ella Schilling, or her remarriage prior to the time that William Schilling attains to the age of twenty-one years, the entire income should be divided between Alice and William—one fourth to Alice and three fourths to William; that when Ernest Schilling and Ella Schilling are dead, or when Ernest Schilling is dead and his wife shall remarry, and William, the youngest of said children, shall be twenty-one years of age, then the trustees should distribute said share as follows: to Alice Schilling $2,000, and to William all of the remainder; and finally, that in case of the death of William Schilling, without issue, before the time when he shall be entitled to final distribution, then all of said share to which William would be entitled, if living, should be assigned to Adolph J. Schilling, Gustav H. Schilling, and Albert S. Schilling, share and share alike, or the survivors of them, or, in case of the death of either of them, to his issue.

This will is clearly and carefully drawn, and, since the law relating to it is now established by this decision, there should be no difficulty in construing it in accordance with its plain provisions and this opinion.

Were it within the province of this court to remake rather than construe this will, we would be strongly inclined to make some of the income presently available for the support and education of William, but this we cannot do. A will may be fairly construed to determine its true intent, but it cannot be changed by the court against such intent even though the interested parties are agreeable to such change. *Will of Zweifel,* 194 Wis. 428, 216 N. W. 840; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778.

*By the Court.*—The order of the county court of La Crosse county construing the will of Isidor Schilling, deceased, is reversed, with directions to construe said will in accordance with this opinion.