[Civ. No. 1698. Fourth Appellate District.—August 31, 1937.]

In the Matter of the Estate of W. T. BROWN, Deceased. ARTHUR J. KELLEY et al., Respondents, v. HELEN BROWN et al., Appellants.

Forgy, Reinhaus & Forgy, Nichols, Cooper & Hickson and Allan J. Carter for Appellants.

Head, Wellington & Jacobs and Guss Hagenstein for Respondents.

BARNARD, P. J.—This is an appeal from an order approving a final account and decreeing distribution of an estate.

W. T. Brown died on November 22, 1933. A large part of his estate consisted of 249,999 shares of stock in W. T. Brown Estate, Inc. That was a holding company with 500,000 shares of stock of the par value of $1 each, of which his widow, Alice Brown, owned 250,000 shares and Arthur J. Kelley held one share. Brown, his wife and Kelley had been the directors of this corporation. After Brown's death his widow transferred one share to their daughter Katherine McGill, and since then the widow, Kelley and Mrs. McGill have acted as directors. The principal asset of W. T. Brown Estate, Inc., was 14,860 shares of stock in Brown & Dauser

Co., a corporation which owned and operated several lumber yards and some orchards.

Arthur J. Kelley and Lester W. Breiner had for many years worked for W. T. Brown in connection with the business of Brown & Dauser Co. and after Mr. Brown's death continued in the active management of that business. In 1925 Mr. Brown had sold 2,476 shares of stock in Brown & Dauser Co. to Kelley and a like number of shares to Breiner. In payment therefor he had taken from each a note for about $50,000 payable on or before ten years after date, with interest at 4 per cent to be added to the principal if not paid annually. Each note recited that 2,476 shares of the capital stock of Brown & Dauser Co. had been deposited as collateral security, that it was agreed that all dividends paid on this stock were to be applied on the note until it was paid in full, that it was understood that Mr. Brown was selling this stock in recognition of past services, and that the signer of the note agreed to remain in the service of Brown & Dauser Co. until the note was paid. There were 20,000 shares of stock in Brown & Dauser Co., the other 188 shares being owned by other members of Brown's family. It will be observed that the W. T. Brown Estate, Inc., owned a controlling interest in Brown & Dauser Co. and at the time of the trial Alice Brown, the widow, Arthur J. Kelley and Mrs. McGill, a daughter of deceased, held a controlling interest in W. T. Brown Estate, Inc., and constituted the board of directors of both corporations.

Arthur J. Kelley, Lester W. Breiner and the widow were appointed executors of Brown's estate in accordance with a nomination in the will. Paragraph "Fourth" of the will gave in trust to Arthur J. Kelley and Lester W. Breiner 249,999 shares of the capital stock of the W. T. Brown Estate, Inc. The trust provisions gave the trustees broad powers as to the management and control of the trust estate, with power to sell and reinvest, and named as beneficiaries four children, a daughter-in-law and three grandchildren of the testator who were given, subject to the trust, varying numbers of shares of this stock. The trust was to remain in force for ten years, during which time the net income was to be paid to the beneficiaries in proportion to the stock each was ultimately to receive. If any beneficiary died without issue before termination of the trust his share

was to be divided among the survivors. This fourth paragraph closed with a spendthrift clause restraining each beneficiary from transferring, pledging, anticipating or in any other manner impairing his interest in the trust estate. In a codicil dated November 2, 1931, Arthur J. Kelley, Lester W. Breiner, Alice Brown, Katherine McGill and Helen Brown, another daughter, were named as trustees of this trust. The "Fifth" paragraph of the will disposed of the residue of the estate and the last clause thereof related to advancements that might thereafter be made by the testator.

In due course the executors filed a final account and petition for distribution, asking that the 249,999 shares of stock in W. T. Brown Estate, Inc., be distributed to the five named trustees. Helen Brown, a daughter, Mabel Butler, a daughter, W. Grant Brown, a son, and Pansy Brown, his wife, who were four of the eight beneficiaries of the trust, filed an objection to the appointment of Kelley and Breiner as such trustees on the ground that their personal interests conflicted with the interests of the beneficiaries. On June 24, 1935, a hearing was had and the court overruled the objection and ordered the appointment of the five named trustees. Findings of fact were filed but before an order and decree was entered the executors filed a request for instructions on certain matters pertaining to the closing of the estate setting forth, among other things, that a question had arisen as to whether some advancements, which exceeded the part of the residue distributable to certain heirs, should be charged against the interest of such heirs in the trust estate set up in the earlier paragraph of the will. In this connection it appears that after the will was executed the testator had advanced to three of the four objectors a total of about $29,000 and had advanced to the other four beneficiaries a total of about $5,000. The court ordered a supplemental account and petition for distribution to be filed and this was done. The four objectors filed supplemental objections to the appointment of Kelley and Breiner as trustees. After a hearing in May, 1936, the court filed additional findings, approved the account and entered a final decree of distribution. Among other things, the final decree appointed Kelley and Breiner as two of the five trustees, and ordered any advancement in excess of the share of the residue available for distribution to any particular heir to be charged against

the interest of that beneficiary in the trust estate. It was provided, however, that each beneficiary should have the income from his interest in the trust property until the end of the ten-year period and that any excess in advancements should then be deducted from that part of the *corpus* of the trust estate which would otherwise come to any such heir and should constitute a first and prior lien on any such interest in the stock. The four objectors have appealed from this order and decree.

The first contention is that the court erred in appointing Kelley and Breiner as two of the five trustees. It is argued that both are disqualified, as a matter of law, since their personal interests conflict with those of the beneficiaries ''by reason of each being large debtors to W. T. Brown Estate, Inc., and to Brown & Dauser Co., and at the same time officers and employees of said companies''. We are pointed to no evidence in support of a further statement that each had exhibited a feeling of marked hostility toward certain of the appellants.

In addition to their notes to W. T. Brown Estate, Inc., secured by a pledge of the stock in Brown & Dauser Co., Kelley was also indebted to the latter company on a note for $1500 and on an open account for some $1200, and Breiner was obligated to that company on a note for $1175, another note for $2,825 and on an open account for some $800. It appears from the evidence that these open accounts largely represented advances or withdrawals taken by these men over a period of years, a charge slip being put in the cash drawer. It also appears that this was a practice followed by all office employees of Brown & Dauser Co. for many years, that it had gone on with the knowledge of Mr. Brown during his lifetime, that it was continued thereafter with the knowledge of the directors of that company, that some months before the hearing the directors had ordered the practice stopped, and that Kelley and Breiner had complied with this order. The two notes covering the purchase price of stock in Brown & Dauser Co. came due after the death of W. T. Brown and have not been paid or renewed. It is argued that if Kelley and Breiner are appointed as two of the trustees any negotiation for the settlement of these various debts would simply be between themselves, personally and as fiduciaries.

The appellants rely particularly on the case of *Overell* v. *Overell*, 78 Cal. App. 251 [248 Pac. 310], and cases therein cited. ██ It is well settled by that case, and many others, that a trustee must act in the highest good faith toward his beneficiary and must not occupy a position where his interests conflict with those of the beneficiary or where he is exposed to the temptation of acting contrary to the best interests of the beneficiary. In that case the removal of a single trustee was approved where he had used certain corporation stock, being the *corpus* of the trust estate, to control that corporation and where in important respects he had used the control thus secured for his own interest and against the interest of the beneficiary. ██ Not only are the facts of that case considerably different from those with which we are now concerned, but a number of other considerations are here involved. An original appointment is here attacked and not a removal, a number of things require consideration in determining whether conflicting interests appear, the appointment does not carry control of the trust estate, and the appointment was desired by the testator with a full knowledge of all of the essential facts. A court has a large discretion in such matters and the real question is not whether the court would have been justified in refusing to make these appointments, but is whether a disqualification so clearly appears that it must be said that the court abused its discretion.

In *Cowen's Estate*, 148 Misc. 35 [265 N. Y. Supp. 40], the court says: "Petitioner contends that by reason of such facts and of the possibilities involved, the personal interest of the respondents is so inherently antagonistic to their duties as trustees as to render them removable under the doctrine of *Pyle* v. *Pyle*, 137 App. Div. 568 [122 N. Y. Supp. 256], and other cases cited by the petitioner under this head. The rule of these cases does not apply. The position in which these respondents are now found is the position in which they were placed by the testator himself."

In *Bailey's Estate*, 306 Pa. 344 [159 Atl. 549], the court said: "It is a serious matter to dismiss trustees appointed by will; much more should be shown by those who wish them dismissed than would be the case where the trustees are appointed by the court."

In Restatement of the Law on Trusts, section 107, it is said: ''The court will less readily remove a trustee named by the settlor than a trustee appointed by the court or by a third person who is by the terms of the trust authorized to appoint a trustee. The court will not ordinarily remove a trustee named by the settlor upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him, although the court would not have appointed him trustee.''

In the next paragraph is the further statement: ''In extreme cases a court may, on grounds of public policy, remove a trustee upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him, or the court may upon like grounds refuse to confirm the appointment. Thus, if the trustee named by the settlor is under an incapacity, or if he had shown himself to be a dishonest man, or entirely lacking in the qualifications necessary for the administration of the trust, the court will remove him or refuse to confirm his appointment, even though the ground was known to the settlor when he named him as trustee.''

In refusing to remove testamentary trustees the Supreme Court of Illinois said: ''The desires of a testator in the appointment of a trustee will be observed, although he may see fit to appoint a person whose relationship to the estate is such that a court of equity would not appoint him if the appointment was to be made by the court.'' (*In re Weller's Estate,* 267 Ill. 230 [108 N. E. 306].)

In *Suffolk* v. *Leiter,* 261 Ill. App. 82, after saying ''Whether a trustee should or should not be removed is a question addressed to the sound discretion of the court, and is dependent upon the circumstances of each particular case'' the court pointed out that the person whose removal was sought was but one of three trustees and that he could do nothing to jeopardize the estate without the concurrence of another trustee, which gave the remaindermen the protection that the testator had in mind. In the case of *In re Wakefield,* 188 Wis. 322 [206 N. W. 76], the court said: ''If the argument made by counsel for the petitioner is carried to its logical conclusion, it would result in the appointment of separate trustees for the benefit of the petitioner who claims through Thomas Wakefield. Such trustees

could not elect themselves members of the board of directors of the corporation, nor could they have a controlling voice in the management of the trust. In view of the situation that exists, there being no allegation of mismanagement, refusal to act, or other misconduct on the part of the trustees, it cannot be said that their position as officers and directors is hostile or inconsistent with their duties as trustees or that their actions are contumacious.''

In the instant case Kelley and Breiner had been long associated with the testator in the business which furnishes the main foundation for the assets of the estate and the *corpus* of the trust. His will clearly shows that he had implicit confidence in them and that he regarded it for the best interest of all concerned, including the beneficiaries of the trust, to have the business continued and their services retained. While they owed a large amount to W. T. Brown Estate, Inc., this was secured by a pledge of stock in the operating company. It was thoroughly understood by everyone that they could not pay this large indebtedness except out of dividends on that stock. It was to their interest, as well as to the interest of the beneficiaries, to make the operation of the business a success. Their other indebtedness was small and if it is to be assumed that it might be to their interest to fail to pay the same any such possibility is offset by the fact that their position as trustees would not enable them to carry out any such plan. The stock constituting the *corpus* of the trust estate was not a controlling interest in W. T. Brown Estate, Inc., and, of course, did not give control over the other corporation. If it were thus controlling Kelley and Breiner would be a minority of the five trustees and could not control the stock in the trust estate. Even so far as their smaller debts are concerned it was to their interest to make the operating corporation a success in order that they might be able to pay them. As employees they were paid respectively $175 and $150 per month. Their salaries had been reduced about 56 per cent during the depression through two cuts, one of which occurred after the testator died. There is no evidence that the business was not being run in the best possible manner and no evidence of anything done by anyone at any time to control either corporation in any manner adverse to the interest of these complaining beneficiaries. Practically all of the matters com-

plained of were fully known to the testator at the time he made his will and when he executed the codicil thereto. While he had no knowledge of certain withdrawals or advances taken by Kelley and Breiner after his death, he did know of that custom which had obtained for many years before. The directors of the corporation knew of the subsequent withdrawals and when they ordered them to stop the order was complied with. While the notes given by Kelley and Breiner in payment for stock did not become due until after the death of the testator, he knew that they would become due at the time fixed therein and knew that they would be unable to pay the notes except out of dividends on the stock, which was exactly what was intended by all parties. The widow and four of the beneficiaries of the trust, being those who had much the largest interest therein, favored the appointment of Kelley and Breiner as trustees. While the interests of minority beneficiaries are entitled to protection the interests of the others should also be considered, and in this case the trustees whose right of appointment is questioned will not be able to control the trust estate, which fact in itself is a considerable protection to the appellants. It does not clearly appear that the personal interests of these two trustees so conflict with the interests of these beneficiaries as to disqualify them as a matter of law, or that their appointment would enable them to favor their own interests over those of the beneficiaries. As the trial court remarked, they may be removed if they violate their trusts in any respect.

It is also urged that Kelley is further disqualified by reason of his addiction to the excessive use of alcoholic liquors. Some evidence on this point was received at the hearing in June, 1935. Other evidence was offered and rejected, the court saying he would consider it as true. At the next hearing, nearly a year later, there was testimony that Kelley was intoxicated on January 1, 1936, which was denied by him. Evidence of reputation for intoxication was again offered and refused admission. The main contention here is that this was admissible. If it had been received it would merely have added to a conflict which already existed. The court rather forcibly indicated he was satisfied with the direct evidence. Under the circumstances here appearing, and where the proffered testimony could do no

more than add to the conflict, the discretion exercised by the court should not be disturbed on appeal, and the question as to the admissibility of this evidence need not be decided.

It is next contended that the court erred in holding that certain advancements made by the testator after the execution of the will, which exceed the amount the respective individuals will receive under the residuary paragraph, are chargeable against the interest of these parties in the trust estate.

The material parts of paragraph "Fifth" of the will read as follows:

"Fifth: As to any other property which I may own at the time of my demise not hereinbefore specifically devised . . . I give, devise and bequeath all of said property as follows:

"(a) One-half share of all of said property to my wife, Alice Beazley Brown, . . . ;

"(b) The remaining one-half share of all of said property to be divided between the following named persons as follows: (The testator's four children, the daughter-in-law, and three grandchildren are then named, with the share each is to receive.)

"(c) As to any advancements made after the date of this Will to any of my said heirs hereinbefore named in this Will, I state that I will hereafter keep a set of books of my private personal accounts with my said heirs, and said private books will show all advancements made by me to my said heirs; that the total amount of all advancements made by me to my said heirs as shown by my said private books at the date of my demise, shall be deducted from the share of such heir or heirs, and said sum or sums so deducted for advancements shall be divided among my other heirs in the proportion set forth in the Fifth Paragraph of this Will. All advancements as shown by my said private books shall be deducted from the share of such heir or heirs, whether the same may be legally enforcible, outlawed or not."

The question is one of interpretation and the intention to be sought for is that which is expressed in the language of the will. (*Estate of Young*, 123 Cal. 337 [55 Pac. 1011].) In *Estate of Vanderhurst*, 171 Cal. 553 [154 Pac. 5, 7], it is said: "Advancements are not to be taken as ademptions of general legacies unless such intention is expressed by the

testator in writing.'' Section 104 of the Probate Code provides ''a clear and distinct devise or bequest cannot be affected . . . by any other words not equally clear and distinct, or by inference or argument from other parts of the will . . . ''

As stated in the first clause thereof, this paragraph relates to property not theretofore specifically devised. After saying that all of the residue is given ''as follows:'' the following matter is divided into three heads marked (a), (b) and (c). The matter of advancements covered in subdivision (c) is not only placed in a paragraph which specifically purports to deal with the residue, but appears to be limited to that part of the estate by the structure, punctuation and language used. Subdivision (c) speaks of the share ''of such heir or heirs'' but contains no language indicating that it was thereby intended to refer to the share of such heirs in the entire estate, or to anything but the share being considered in that paragraph, namely the residue. The advancements are treated as a part of the residue and the fact that they are to be deducted and divided in the proportion set forth in that paragraph, which is entirely different from the proportion used in the trust provision, is a further indication of an intention to refer to the part of the estate then under consideration and not to another part which had been divided in another manner. The natural and reasonable interpretation of the language used is that this paragraph relates in its entirety to the residue of the estate.

This view is strengthened by the fact that the testator had theretofore, in paragraph fourth, specifically devised certain property to be held in trust for ten years, with clear provisions designed to prevent those heirs and devisees from either disposing of that interest or anticipating the same in any way. This furnishes strong evidence of his intention to have that part of his estate kept intact in order that it might go to those parties at the end of ten years and not before.

A further consideration is that a share in the residue is the only part of this estate which one of these devisees would certainly get or which he could dispose of by his own will. The interest of each devisee in the trust estate is contingent upon his living until the end of the trust period. In the absence of language clearly expressing such an intention it cannot be assumed that the testator intended to make this definite deduction or charge applicable to an indefinite or

contingent interest which might never be received. In our opinion, the court erred in interpreting these provisions as requiring or authorizing the collection of any excess advancements by making the same a charge against the respective interests in the trust estate.

In this connection the respondents argue that the appellants are estopped from now claiming error in this respect since in their first objections, filed on May 3, 1935, they alleged that a trust had been created by the will for the benefit of certain persons in specified share amounts "subject to adjustments for advances made by the deceased in his lifetime". This allegation was made incidentally in setting up the general facts as they might relate to the appointment of trustees. The first hearing was devoted to that question and the interpretation of the will received slight, if any, consideration. When the executors later filed a request for instructions the question of advancements and the interpretation of this part of the will was raised and was for the first time considered at the second hearing. At that time counsel for these appellants argued to the court that most of the devisees who had received advancements would receive nothing from the estate except a beneficial interest in the trust and that this trust was not subject to any charge for the advancements. It was then suggested by both sides that this was a question of interpretation which must be decided by the court, and the matter was taken under advisement.

Not only are the facts insufficient to show an estoppel, as is here claimed, but the proper interpretation of a will cannot be settled or controlled by the admission or stipulation of the parties. (*In re Young's Estate*, 92 Misc. 633 [157 N. Y. Supp. 494]; *In re Zweifel's Will*, 194 Wis. 428 [216 N. W. 840]; *In re Schilling's Will*, 205 Wis. 259 [237 N. W. 122, 75 A. L. R. 184]; *In re Stanley's Will*, 223 Wis. 345 [269 N. W. 550].)

That portion of the order and decree appealed from which orders any excess advancement received by any devisee to be charged against the interest of such person in the trust estate is reversed, and the trial court is directed to amend that part of its findings and decree in accordance with the views herein expressed. All other portions of the order and decree are affirmed. Each side to pay its own costs.

Jennings, J., concurred.