[Civ. No. 18089.   Second Dist., Div. Three.   Feb. 9, 1951.]

Estate of ALFRED J. KEYSTON, Deceased.  MARY  B.
KEYSTON  et  al.,  Appellants,  v.  D.  W.  KEYSTON,
Respondent.

Aides, Fairfield & Schwamb and Joseph W. Fairfield for Appellants.

Don Lake for Respondent.

WOOD (Parker), J.—Appeal by beneficiaries of a testamentary trust, as objectors, from an order settling current account of trustee, allowing attorney's fees to trustee, and denying the petition of the beneficiaries for removal of the trustee.

In 1939, Alfred J. Keyston purchased 1,450 shares of stock of the Lichtenberger-Ferguson Company, a corporation, which was all the stock of the corporation except 500 shares of treasury stock. At the time of said purchase the corporation, which was a manufacturer of saddles and other leather goods in Los Angeles, was in receivership. It appears that Alfred conducted the business alone until 1942, when his brother, Donald W. Keyston, became associated with him in conducting the business, and at that time the corporation was engaged in manufacturing war materials. On April, 1943, Donald acquired the 500 shares of treasury stock. In 1945, Alfred, who had become a member of the United States Marine Corps, was killed in the war. At that time Donald was a director and vice-president of the corporation. Alfred left a will in which he named Donald as executor, and in which he gave his 1,450 shares of stock to Donald in trust and directed that the income therefrom be divided between his widow, Mary B. Keyston, and his minor son, Lanny J.

Keyston. In order to obtain money with which to pay estate and inheritance taxes, 200 of the said 1,450 shares of stock were sold by the executor (Donald) to J. W. Keyston, the father of Donald and Alfred. In February, 1946, the court appointed Donald trustee and ordered distribution of the estate. Pursuant to that order, the 1,250 shares of stock which remained in the estate were distributed to Donald as trustee. Donald became president of the corporation, and he continued to serve as one of its four directors. The other three directors were Donald's attorney, a bookkeeper who was an employee of the corporation, and J. W. Keyston. It appears that during 1946 the corporation obtained authority to issue 700 additional shares of stock. Donald acquired the 700 shares in 1946 and 1947. Then, the 2,650 shares of stock of the corporation were held as follows: 1,250 by Donald as trustee, 1,200 by Donald individually, and 200 by J. W. Keyston. In 1946 and 1947 dividends were declared.

On September 16, 1949, the trustee filed his first account current, which covered the period from February 21, 1946, to August 30, 1949. He stated therein that he was chargeable with 1,250 shares of Lichtenberger-Ferguson stock of the appraised value of $81,250. He also stated therein that he had paid to Mary B. Keyston, to be used one-half for her and one-half for Lanny J. Keyston, the following sums: $2,350 in 1946; $2,875 in 1947; $3,125 in 1948; and $1,964 in 1949 (or a total of $10,312.68). He requested therein permission of the court to sell such shares of said stock as may be necessary to obtain money to pay his attorney the sum of $850 for services rendered.

Mary B. Keyston individually and as guardian ad litem of Lanny J. Keyston filed objections to the trustee's account, and at the same time she filed a petition for the removal of the trustee. In said petition she alleged that, "D. W. Keyston, individually, and as trustee and by virtue of his holdings as shareholder in the said Lichtenberger-Ferguson Company, individually and as trustee, is a majority shareholder of the said corporation, and that as such, has been able to control and manage the affairs of the said corporation and has so controlled and managed the affairs of the said corporation for his own purpose, use and benefit and to the detriment of the beneficiaries of said trust." She further alleged therein that the trustee, by virtue of his individual holdings in said corporation, and "as an officer and director and shareholder

of said corporation, has interests which are antithesis to the interest of the trust, and as such cannot exercise his duties as a trustee with the full faith and capability as is required by a trustee.''

On October 11, 1949, the trustee filed an amendment to said account in which he stated that the total sum shown in his current account as having been paid the beneficiaries included an advance of principal in the amount of $4,150; and he requested that the court authorize him to sell such shares of stock as may be necessary to reimburse the Lichtenberger-Ferguson Company for the said advance of principal to the beneficiaries.

At the hearing the trustee testified that in 1946 the corporation ''was earning money''; it paid dividends in 1946 and 1947, but it lost money in 1948; during 1948 the corporation began advancing money to the account of the beneficiaries, and it made further advances to their account in 1949; the total amount so advanced was $4,150; in 1949 the sum of $964.68 was also paid to the beneficiaries which amount was a tax refund to the trust estate; each year he gave Mary B. Keyston an accounting of the trust account, but he did not give her a paper showing the corporate earnings. He testified further that the appraised value of the stock, shown in his current account to be $81,250, was the value as appraised in 1946; the stock had not been appraised since 1946, and (at the time of trial) it was not worth that much, but was worth ''probably 50 some-odd dollars a share''; the corporation was doing no more ''war work''; it was operating at a loss, and it then owed the bank $13,000; he didn't know what ''the prospects of the corporation'' were; he thought it had a good future, but he did not know when the ''turning point'' would come; the purpose for increasing the capitalization of the corporation was to eliminate indebtedness; the corporation had borrowed money from various sources to keep in operation; the bank lent ''a considerable amount of money'' to the corporation; he (the witness) advanced money to it at various times, and he ''took'' stock in the corporation for the indebtedness; it was to the advantage of the corporation to issue stock to him instead of giving him notes; he paid $53 a share (a total of $26,500) for his original 500 shares of stock in the corporation, and he paid $58.50 a share (a total of $40,950) for the 700 additional shares of stock. He testified further that the board of directors decided what salary he should receive as president of the corporation; the

last time the directors voted on the matter was about 10 months before the trial, at which time they gave him a salary of $1,000 a month; thereafter he (the witness) voluntarily reduced his salary to $750 a month and has received that salary ever since. He also testified that he voluntarily reduced his salary April 1, 1949; prior to that time he was drawing $1,000 a month, and he drew $1,000 a month during 1948 when the corporation was losing money.

The bookkeeper, who was also a director of the corporation, testified that the corporation had lost money since 1948; additional capital was obtained for the corporation in an endeavor to bring in other merchandise and increase the business; at directors' meetings, J. W. Keyston had continuously given them the benefit of his experience and they were guided largely by what he advised; and he thought J. W. Keyston had done a great deal toward dictating the policies of the corporation.

The trial court found that the allegations of the petition for removal of the trustee, to the effect that he had controlled and managed the affairs of the corporation for his own benefit and to the detriment of the beneficiaries, were untrue. It also found that the allegations contained in the current account and the amendment to the current account were true. The court made an order settling the current account as amended, allowing $850 as attorney's fees for services theretofore rendered, authorizing the trustee to sell, subject to confirmation by the court, sufficient of the Lichtenberger-Ferguson Company stock, held by him in trust, to produce not to exceed $5,500 with which to repay the corporation the amount advanced by it to the beneficiaries and to pay the attorney's fees. The court denied the petition to remove the trustee.

Appellants contend that the trustee should be removed. They argue, in substance, that his interest as an officer and director of the corporation conflicts with his trust obligations. They state in effect that, as such officer and director, he has drawn a substantial salary ($750 or $1,000 per month) when the beneficiaries received little from the trust, and during the past 2½ years when they received nothing therefrom; and that "all this" is contrary to the intentions of the testator.

■ A trustee is bound to act in the highest good faith toward his beneficiary (*Churchill* v. *Peters*, 57 Cal.App.2d 521, 531 [134 P.2d 841]), and the question as to whether he does so act is one of fact for the trial court. ■ A trustee

may be removed when it appears that his private interests conflict with his trust duties. (*Moore* v. *Bowes,* 8 Cal.2d 162, 165 [64 P.2d 423].) ▮ Whether a trustee should be removed, however, is a matter within the sound discretion of the trial court and is " 'dependent upon the circumstances of each particular case.' " (*Estate of Brown,* 22 Cal.App.2d 480, 486 [71 P.2d 345].) In the case just cited, some of the beneficiaries of a testamentary trust objected to the appointment of two of the five trustees named in the will on the ground that their personal interests conflicted with the interests of the beneficiaries. The trust estate therein consisted of stock of a certain corporation. The principal asset of that corporation was stock in a second corporation. The two trustees, whose appointments were there objected to, had purchased stock in the second corporation from the testator and had given him their notes (which had not become payable at the time of his death) secured by a deposit of the said stock purchased. The court therein held that it did not appear that there was such a conflict as to disqualify said trustees as a matter of law. It was stated therein (p. 485) that their "appointment was desired by the testator with a full knowledge of all of the essential facts." It was stated further (same page) that a court "has a large discretion in such matters," and that the real question is whether a "disqualification so clearly appears that it must be said that the court abused its discretion." It was also stated therein at page 486 (in quoting Rest., Trusts, § 107) : " 'The court will less readily remove a trustee named by the settlor than a trustee appointed by the court. . . . The court will not ordinarily remove a trustee named by the settlor upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him, although the court would not have appointed him trustee.' "

▮ As above shown, the trustee was an officer and a director of the corporation during the lifetime of the testator. It appears that when the testator executed his will and named Donald as trustee, he did so with the knowledge that Donald then owned 500 shares of stock in the corporation and that by giving the stock to him in trust Donald would have control of all the stock of the corporation. It would therefore seem that the testator intended that, upon his death, Donald should have control of the corporation. The appellants herein also assert that the trustee, by increasing his holdings, violated "the rule of undivided loyalty," and created conflicting in-

terests. Prior to the time the additional stock was issued to him, he was, as above shown, a stockholder, the president, and a director of the corporation, and he had control of 1,750 shares of stock, which was all the stock of the corporation except 200 shares. He testified regarding the condition of the trust estate and the corporation. The bookkeeper also testified regarding the history and the financial condition of the corporation. Counsel for appellants stated at the hearing that there was not ''any question of dishonesty here at all.'' The evidence was legally sufficient to support the order denying the petition to remove the trustee.

Appellants contend further that the account and the amended account should be disapproved. They argue that the trustee should be compelled to explain why he permitted the trust estate to ''deplete'' in value, and why, since the corporation was losing money, he made no attempt to dispose of the corpus and reinvest the sums thereby realized. They argue further that, since the ''trust was the majority stockholder, financial statements of the corporation should have been submitted with the account so as to determine why the trust fund was not productive of any income.'' Those arguments pertain principally to the matter of management of the corporation rather than to an accounting by the trustee. It is to be noted, however, that the account as originally rendered was very general in form. It merely recited, with respect to income received by the trustee, that during each of the years 1946, 1947, 1948, and 1949, a certain sum was received from the corporation; that in 1949 a certain sum was received as an income tax refund; that a certain sum was received from Alfred's estate. The total of receipts was $10,345.93. As to disbursements, the account merely recited that during each of those years just mentioned a certain sum was paid to Mrs. Keyston for the use of the beneficiaries; and that in each of said years a certain ''Accounting analysis charge'' had been made by a bank. The total amount of disbursements was $10,331.84. ($10,314.68 paid to Mrs. Keyston, and $17.16 paid to the bank.) It was not specified in the account whether the amounts paid to Mrs. Keyston represented dividends on the stock of the trust estate or whether the amounts were ''advances.'' After the beneficiaries had filed their objections to the account and had filed their petition for the removal of the trustee, the trustee filed an amendment to his account wherein he stated that in his account he had reported that $10,314.68 had been paid to Mrs.

230

Keyston, and that included in said sum was the sum of $4,150 which "is an advance of principal" to her. In that amendment he asked that an order be made authorizing him to sell such stock of the trust estate as might be necessary to reimburse the corporation for the "advance of principal" and to pay attorney's fees and cost. (In said amendment the trustee asked that the court allow him $2,500 for attorney's fees and costs in the matter of an appeal that the beneficiaries had taken in a certain action against the trustee.) It thus appears that the trustee omitted a very substantial item in his account as originally rendered, that he did not prepare his account carefully or with the intention of conveying specific information as to each amount paid as a dividend or as an advancement. The account does not recite expressly how much was paid as dividends, and that amount cannot be determined from the account except by deducting the amount of "advances" (referred to in the amendment) from the total of the various amounts paid to Mrs. Keyston as shown in the original account. The trustee should have rendered an account which stated specifically the amounts that were paid as dividends or advances, and should have stated the dates when such payments were made. ■ In view of the fact that one of the beneficiaries was a minor, it was especially important that the account be specific. At the hearing the trustee testified that the various dividends received by him from the corporation in 1946 were as follows: $937.50; $250; $687.50. He testified that in 1947 he received dividends therefrom as follows: $937.50; $600; $337.50; $600; $337.50. He was then asked by his counsel if he received dividends from the corporation in 1948. He replied: "This doesn't particularly indicate whether it was dividends or not. I believe that is when we started advancing." With respect to that question, he also said: "As far as I can determine from my records, it is an advance now." Then he testified that in 1948 he received the following amounts: $400; $250; $250; $250; $275; $275; $275; $275; $275; $275; $275; $275. As to the year 1949, he testified that he received additional advances as follows: $275; $275; $250. The total of the amounts received by the trustee in 1946, as shown by his testimony above, is $1,875, which is the same amount that, according to his account, he paid to Mrs. Keyston in 1946. The total of the amounts received in 1947, as shown by his testimony above, is $2,812.50, which is the same amount that, according to his account, he paid to her in 1947. The total

of the amounts received by him in 1948, as shown by his testimony, is $3,350, which is $225 more than the amount ($3,125) which, according to his account, he paid to her in 1948. The total of the amounts received by him in 1949 from the corporation, as shown by his testimony above, is $800. He also testified that he received $964.68 as a tax refund. The total of these two items is $1,764.68. In his account, he stated that in 1948 he paid her $1,964.68. It thus appears, according to his testimony, that he paid her $200 less than the amount stated in his account. It appears also that the trustee's testimony as to when he commenced to make the advance payments was indefinite. If he was correct in asserting that he commenced to make such payments in 1948, then it appears, according to his testimony, that he paid $3,350 in 1948 and $800 in 1949 or a total of $4,150. It appears, according to his account, that in 1948 he paid $3,125, and, according to his oral explanation of the 1949 item of $1,964.68, as shown in his account, he paid $1,000 in 1949 (since he explained that $964.68 was a tax refund) or a total of $4,125. In other words, he testified that he paid $3,350 in 1948 and $800 in 1949, and his account shows (with his explanation of the 1949 item) that he paid $3,125 in 1948 and $1,000 in 1949. ■ The differences as to amounts paid, as shown by the trustee's account and his testimony, are not reconcilable. The record does show that counsel for the beneficiaries said that they were not objecting to the propriety of advance payments by the corporation. That statement is to be interpreted as meaning that no question was raised regarding the right of the corporation to make such payments. It is not to be assumed, however, that by reason of such statement a correct accounting as to those payments would not be required. The order settling the account and the account as amended was a general statement to the effect that the account and the "Amendment" be and the same "is allowed and settled" (except that an item of $12 advanced as costs was reduced to $6.00). The order did not purport to be a statement of the charges against the trustee or of credits to which he was entitled, except by said general reference allowing and settling the account. The evidence did not support the order settling the account. The order should be reversed, and the trustee should be required to render a specific and correct account.

■ According to testimony on behalf of the trustee, the value of the legal services rendered in preparing the account

was $100, and the value of the legal services in appearing at the hearing and various continuances was $750. In view of the general and inaccurate account rendered and the allegedly poor financial condition of the business, the amount of $850 allowed for attorney's fees was excessive.

As above stated, the court made an order authorizing the trustee to sell, subject to confirmation, sufficient stock "to produce not to exceed $5,500" in order to reimburse the corporation for money advanced and to pay attorney's fees. The order was not sufficiently definite as to the number of shares of stock to be sold, and it failed to state a minimum price for which a share might be sold. ■ The appraised value of the 1,250 shares of stock, according to the account, is $81,250 or $65 per share. The trustee testified that he paid $58.50 a share for the additional 700 shares of stock he purchased. He also testified that the stock was worth "probably 50 some-odd dollars a share." A statement was made at the hearing, on behalf of the trustee, that the stock was not listed and it would be difficult to sell it. In view of the circumstances just mentioned, and in view of the controversy that has arisen between the trustee and the beneficiaries, an order permitting the sale of stock for the aforesaid purposes should be definite as to a maximum number of shares to be sold and the minimum price per share.

At a hearing herein upon a further account the beneficiaries should be permitted to inquire fully concerning the manner in which the trustee paid the $22,000 which the corporation owed to Alfred Keyston. The judge herein did permit some questions regarding this matter to be answered, but he stated that he believed the matter was immaterial to the issues herein. The trustee testified, regarding the payment of said indebtedness, that he purchased 500 shares of stock in January, 1943, at $53 per share or a total of $26,500, and that with the proceeds of that purchase the corporation paid a part of its indebtedness to Alfred. The bookkeeper for the corporation testified that the indebtedness was paid in April, 1943, by Donald "assuming the indebtedness of his brother, and stock was issued for the value, plus additional money, and also additional money that we owed to Mr. Keyston [Donald]"; that the indebtedness was transferred so that Donald would owe the money to his brother, and the corporation became indebted to Donald. It seems from the testimony of the trustee that the corporation paid Alfred, but according to testimony of the bookkeeper it seems

that Donald agreed to pay the corporation's indebtedness to Alfred in consideration of the transfer of stock by the corporation to Donald. Of course, as argued by the trustee, this is not a proceeding to determine whether Donald is indebted to Alfred's estate. Upon the question, however, as to the corporation's ability to pay dividends it is material to know whether its indebtedness of $22,000 has been paid.

The order denying the petition to remove the trustee is affirmed. The order settling the account and amended account is reversed, with the direction that the superior court order the trustee to render an account which recites specific information regarding the dividends and the advance payments. The order allowing attorney's fees is reversed, with the direction that the superior court reconsider and determine the matter of reasonable attorney's fees upon the hearing of a further account. The order authorizing the trustee to sell stock to reimburse the corporation and pay attorney's fees is reversed, with the direction that the superior court reconsider and determine that matter upon the hearing of a further account.

Shinn, P. J., and Vallée, J., concurred.